**Rodolfo ESPINDOLA, by his Guardian ad Litem Imelda G. Tovias, Plaintiff,**

v.

**Bruce G. BARBER, District Director, San Francisco District, United States Immigration and Naturalization Service, Defendant.**

**Civ. No. 7429.**

United States District Court
N. D. California, N. D.

May 29, 1957.

Walter C. Frame, Sacramento, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

Plaintiff has instituted this action in this Court for an adjudication of his

citizenship status under the provisions of Title 8 U.S.C.A. § 1503, and Title 28 U.S. C.A. § 2201. The case has been submitted to the Court on an agreed statement of facts; the only issue being one of law.

Plaintiff is the illegitimate son of Imelda G. Tovias who became a naturalized citizen of the United States on March 7, 1950, in the Superior Court of the State of California, in and for the County of Sacramento. Plaintiff was born in Mexico on October 22, 1935. His father, an alien, never married plaintiff's mother. Plaintiff's mother has had sole and exclusive custody over plaintiff since his birth. Plaintiff, accompanying his mother, was lawfully admitted to the United States from Mexico on September 4, 1943, for permanent residence. On April 29, 1955, plaintiff was adjudged to be a narcotic drug addict and was ordered committed to the Stockton State Hospital, Stockton, California, from which institution he was discharged after the minimum period of three months. On February 13, 1956, after a hearing held before Norman H. Speck, a Special Inquiry Officer for the Immigration and Naturalization Service, plaintiff was ordered deported from the United States on the ground that he is an alien who became a narcotic addict after entry (Title 8 U.S.C.A. § 1251(a) (11)). An appeal from the decision of the said Special Inquiry Officer was dismissed by the Board of Immigration Appeals on July 27, 1956. The issue presented in the instant action was duly presented in the foregoing administrative proceedings. It is clear from the record that plaintiff has exhausted his available administrative remedies and is thereby entitled to an adjudication of his status by this Court. If plaintiff is a citizen, as he asserts, then, clearly, he would not be subject to deportation under § 1251(a) (11).

The principal issue presented in this case is whether plaintiff acquired derivative citizenship by virtue of the naturalization of his mother on March 7, 1950. It is clear from the wording of § 321(a) (3) of the Immigration and Nationality Act of 1952 (Title 8 U.S.C.A. § 1432(a) (3)),[1] that had plaintiff's mother become naturalized after the effective date of that Act (December 24, 1952), plaintiff, if he had been under the age of sixteen at the time of such naturalization, would thereby be entitled to the status of a citizen. In view of this state of the law under the 1952 Act, there are presented two subsidiary issues which must be determined before the principal issue, heretofore noted, can be resolved. These two issues are:

I. Did the law in force at the time of plaintiff's mother's naturalization in 1950 (The Immigration and Nationality Act of 1940) operate to confer derivative citizenship on plaintiff by virtue of his mother's naturalization?

II. If not, does the Immigration and Nationality Act of 1952 apply so as to confer citizenship on plaintiff, when such citizenship could only be derived from the naturalization of his mother, which took place prior to the effective date of said Act?

Under § 314(c) of the 1940 Act (Title 8 U.S.C.A. § 714(c), 1942 ed.),[2] which

---

1. The applicable portion of § 321 (Title 8 U.S.C.A. § 1432) provides:

"(a) A child born outside of the United States of alien parents, * * * becomes a citizen of the United States upon fulfillment of the following conditions:

*     *     *     *     *

"(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation."

2. The applicable portion of § 314 (Title 8 U.S.C.A. § 714, 1942 ed.) of the 1940 Act provided:

"A child born outside of the United States of alien parents, * * * becomes a citizen of the United States upon fulfillment of the following conditions:

*     *     *     *     *

"(c) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents;"

corresponds to § 321(a) (3) (Title 8 U.S.C.A. § 1432(a) (3)) of the present Act, a foreign born child of alien parents, both living, could become a citizen through the naturalization of but one parent, only if such naturalized parent had legal custody of the child when there "has been a legal separation of the parents" (assuming that the age and residence requirements (§ 714(d) and (e), Title 8 U.S.C.A. 1942 ed.) had been satisfied. It is conceded that these requirements were met in the instant case). Although neither the parties nor the Court have been able to locate any cases where this section was sought to be applied to an illegitimate child such as the plaintiff herein, a Senate committee in 1950 (acting pursuant to S.Res. 137, a resolution authorizing an investigation of the then existing immigration laws) recognized that under the 1940 Act a child born out of wedlock, and never legitimated, could not derive United States citizenship from the naturalization of either his father or his mother (Senate Report No. 1515, 81st Congress, 1st Session, at p. 708). Clearly, under § 102(h) of the 1940 Act (8 U.S.C.A. § 502(h), 1942 ed.*), if the child had been legitimated under the law of his domicile prior to his sixteenth birthday and was in the legal custody of the legitimating parent, he would be treated as a "child" for the purposes of derivative citizenship.[3] However, when such a child (both of whose parents were living aliens) sought to derive citizenship through the naturalization of one parent only, the Senate Committee pointed out that under § 314(c) such parent must have been judicially separated (not separated merely by virtue of a private separation agree-ment) and have sole legal custody of the child at the time of such naturalization (Senate Report 1515, supra, at p. 709).

The recent case of In re Howard's Petition, D.C.W.D.Mo.W.D., 147 F.Supp. 676, in holding that a foreign born illegitimate child could be *naturalized* on the petition of his mother, who was naturalized in 1950, under the provisions of § 322 of the 1952 Act (Title 8 U.S.C.A. § 1433), indicated, as a dictum, that *automatic derivative citizenship* would not have been available to the child in such a situation under the 1940 Act (see page 677).

■ It is the opinion of this Court that neither the express language of the 1940 Act (§§ 102(h) and 314(c)), nor the interpretation given those provisions by Congress, itself, permit the conclusion that plaintiff in the instant case automatically derived citizenship as a result of his mother's naturalization in 1950.

It remains next to be determined whether the 1952 Act operated to confer a status on the plaintiff which he did not have before. As noted previously, it is clear that had the 1952 Act (§ 321(a) (3)) (8 U.S.C.A. § 1432(a) (3)) been in effect at the time plaintiff's mother was naturalized in 1950, he would have been entitled to the status of a derivative citizen.

■ It is clear that Congress intended to, and did, *change* the law in this regard in 1952, and did not intend, by the Act of that year, merely to *restate* what it thought the prior law had been. The basis for such a conclusion is demonstrated by the language, previously noted, in Senate Report 1515 (1950, 81st Cong.,

---

*Now 8 U.S.C.A. § 1101(c) (1).

3. Section 102(h) (Title 8 U.S.C.A. § 502 (h), 1942 ed.) of the 1940 Act provided:

"(h) The term 'child' includes a child legitimated under the law of the child's residence or domicile, whether in the United States or elsewhere; also a child adopted in the United States, provided such legitimation or adoption takes place before the child reaches the age of sixteen years and the child is in the legal custody of the legitimating or adopting parent or parents."

In the 76th Congress, 3d Session, the Senate Committee in its report on the 1940 Act when it was still a bill (H.R. 9980), declared that:

"Illegitimate children would be treated as other children if legitimated before the age of sixteen years and in the legal custody of the legitimating parent or parents." (Senate Report No. 2150, 76th Cong., 3d Sess., at page 5.)

2d Session); by the addition of the words, " * * * or the *naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation * * * "* in the 1952 Act (§ 321(a) (3) as contrasted with former § 314(c)); and by the implicit recognition that the addition of these words, just quoted, would broaden the effect of the then existing § 314(c) (See House Report No. 1365, 82nd Cong., 2d Session, listing at page 4 this change in wording as amendment No. 27, and setting forth at page 255 the contrast between the prior provision and the 1952 provision).

The possibility that the 1952 Act, except in certain specified instances, might be construed as having retroactive effect was destroyed by the broad, sweeping language of the savings clause set forth in § 405 (Title 8 U.S.C.A. § 1101, note).[4] While this provision has generally been applied to preserve rights which could have been acquired under the prior law by the alien, citizen, or national (as the case may be), but which were no longer made available under the 1952 Act (United States v. Menasche, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615; Yanish v. Barber, 9 Cir., 211 F.2d 467; and Aure v. United States, 9 Cir., 225 F.2d 88), it is the opinion of this Court that the language of the savings clause is broad enough to apply as well when the Government is relying on the provision. Plaintiff herein, prior to the 1952 Act, had the "status" or "condition" of an alien not eligible to claim derivative citizenship, and in view of the savings clause, § 321(a) (3) of the 1952 Act could not operate to affect that "status" or "condition".

Plaintiff, having failed to demonstrate that he has become a citizen of the United States, he is, therefore, subject to deportation in accordance with the order of the Immigration and Naturalization Service, and is not entitled to the relief which he seeks by this action.

It is, therefore, ordered that plaintiff take nothing by this action, and that judgment be, and it is, hereby entered in favor of the defendant in this action. Defendant will prepare findings of fact and conclusions of law, a form of judgment and any and all other documents necessary to the final disposition of this case in accordance with this order, and lodge them with the Clerk of this Court in accordance with the applicable rules and statutes.

---

4. Section 405 provides, in part, as follows:

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalizaton, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes (sic), conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * "

As stated by the Supreme Court in United States v. Menasche, 348 U.S. 528, at page 535, 75 S.Ct. 513, at page 518, 99 L.Ed. 615:

"The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress."