MATTER OF L——

In DEPORTATION Proceedings

A-7205158

*Decided by Board February 26, 1959*

Citizenship—Section 321(a) of 1952 act—Acquisition by illegitimate child on effective date of Immigration and Nationality Act.

Illegitimate child whose mother was naturalized while he was under 16 years of age, who was still under 16 on the effective date of the Immigration and Nationality Act and on that date was residing in the United States pursuant to a lawful admission for permanent residence, is held to have acquired United States citizenship under section 321(a) of the 1952 act. (Cf. *Matter of L——,* 7 I. & N. Dec. 512, and *Matter of T——,* 7 I. & N. Dec. 679.)

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of violation of law relating to narcotics, namely, possession of narcotic drug.

**BEFORE THE BOARD**

**Discussion:** This case is before the Board on certification by the special inquiry officer from his order of October 23, 1958, finding respondent to be an alien and ordering his deportation from the United States. The special inquiry officer certified the case to the Board in order that we might consider the applicability of precedents considered by him to be binding, and the interpretation of section 321 of the Immigration and Nationality Act as it applies to this case.

Respondent was born in Jamaica on September 21, 1938, the illegitimate child of T——L——B——. He was lawfully admitted to the United States for permanent residence June 2, 1949, when he was 10 years of age. His mother was naturalized by the United States District Court for the Southern District of New York on December 12, 1949, when respondent was 11 years of age.

Respondent is found by the special inquiry officer to be an alien and national of Great Britain. He was convicted on June 23, 1958, at Special Sessions Court, Manhattan, New York, for possession of a narcotic drug in violation of section 3305 of the New York Public Health Law. If he is an alien, he is deportable on

272

the charge stated in the order to show cause. It is contended for respondent that the passage of section 321 of the Immigration and Nationality Act bestowed United States citizenship upon him as a derivative, resulting from his mother's naturalization in 1949, and from the fact that he was under 16 years of age when the act became effective on December 24, 1952.

The special inquiry officer accurately states that there is no doubt that under the law in effect at the time respondent entered the United States and at the time of his mother's naturalization, section 314 of the Nationality Act of 1940, 8 U.S.C. 714, as an illegitimate child he could not derive United States citizenship through the naturalization of his mother (*Espindola* v. *Barber*, 152 F. Supp. 829 (N.D. Calif., 1957)). The special inquiry officer also discusses *Matter of L——*, 7 I. & N. Dec. 512 (Reg. Commr., July 2, 1957), and *Matter of T——*, 7 I. & N. Dec. 679 (Reg. Commr., March 6, 1958, appvd. by Ass't. Commr.). Each of these cases concerns an illegitimate child born abroad who entered the United States legally for permanent residence. The mothers were all naturalized, and the question in each case was whether or not the illegitimate child derived citizenship through the naturalization of the mother.

*Espindola* v. *Barber, supra,* concerned the citizenship of one who was born in Mexico on October 22, 1935, and entered the United States September 4, 1943. His mother was naturalized on March 7, 1950. Espindola was 17 years of age when the 1952 act became effective. The court found that he was not a citizen, stating (1) that an illegitimate child could not acquire citizenship from the naturalization of either his father or mother under the 1940 act, and (2) that he could not acquire citizenship under section 321(a) of the Immigration and Nationality Act, which does not have retroactive effect because of the savings clause, section 405.

In *Matter of L——, supra,* the child was born in Martinique on April 1, 1938. His mother was naturalized on November 20, 1951. L—— was 14 years of age when the Immigration and Nationality Act became effective. He entered the United States on December 4, 1953 (15 years of age at entry). It was found that L—— was a United States citizen, because the "last material condition"—his entry into the United States—was met by L—— after 1952 and while he was still under 16 years of age.

*Matter of T——, supra,* concerned an illegitimate daughter born in Germany on December 23, 1939. She entered the United States with her mother on January 2, 1948, at eight years of age. Her mother was naturalized on November 2, 1952, when T—— was 12 years old. T—— went to Japan on June 27, 1953, with her mother and stepfather and reentered the United States on August 1, 1955, when she was 15½ years old. T—— was 13 when the Immigration

and Nationality Act became effective. It was held that she had acquired derivative citizenship based on her second entry, which occurred after the act became effective and while she was still under 16 years of age.

It is stated in *Matter of L——, supra,* that an analysis of section 321 of the act reveals the following basic requirements: (1) that the parent or parents be naturalized; (2) that such naturalization takes place while the child is under the age of 16 years; and (3) that the child takes up lawful permanent residence in the United States before reaching the age of 16 years. The decision continues by stating, "In administering various sections of law relating to derivation of citizenship, the Service has taken the position that the law in effect when the last material condition is met is controlling. It is not giving a retrospective construction to the 1952 act to consider it as applicable to a case where one of the requirements is satisfied after the effective date of that act."

The special inquiry officer stated that if it were not that he felt himself bound by the *Espindola* decision, he would hold that respondent derived citizenship upon the enactment of the 1952 act on a theory, in part at least, that the "last material condition" necessary to bring into being the applicant's citizenship, referred to in *Matter of L——, supra,* could be the enactment of the 1952 act. It seems apparent to us that all the material conditions had not been met when the act became effective, because respondent was still under the age of 16. Therefore, he was not foreclosed from derivative citizenship at that time. It was not necessarily the passage of the act which was the last material condition, but the fact that No. 2 of the three material conditions is an "open condition," a continuing situation, permitting the statute to bestow citizenship on respondent so long as he was still under the age of 16 when the law was passed. *Espindola* is not a binding precedent in the present situation, because Espindola was past 16 when the 1952 act became effective and clearly could not have brought himself within the terms of section 321.

The savings clause of the Immigration and Nationality Act provides:

SEC. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed * * * to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or *any status, condition,* right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect * * * (Emphasis supplied.)

It is true that respondent had the *status of condition* of an alien not eligible to claim derivative citizenship prior to the passage of this act, but in our opinion section 321(a)(5) clearly changed his *status and condition* inasmuch as he was an illegitimate child under

274

the age of 16 years "residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause * * * (2) or (3) of this subsection * * *." The act by its terms thus confers citizenship on this alien. He did not have to "begin to reside permanently in the United States" *following* the effective date of the act, because *he was already here* and that satisfied the first condition of section 321(a)(5).

To recapitulate: We hold that under the provisions of section 321(a) of the Immigration and Nationality Act respondent acquired United States citizenship at the time the Immigration and Nationality Act became effective on December 24, 1952, inasmuch as he was an illegitimate child born outside the United States of alien parents, whose mother was naturalized, whose paternity has not been established by legitimation, who was residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of his mother, whose mother was naturalized while he was still under the age of 16 years, and who was still under the age of 16 years at the time of the effective date of the Immigration and Nationality Act.

**Order:** It is ordered that respondent is found to be a United States citizen and that the proceeding be terminated.