MATTER OF PIKKARAINEN

In DEPORTATION Proceedings

A–6705794

*Decided by Board December 10, 1963*

(1) An illegitimate child could not derive U.S. citizenship under section 314 of the Nationality Act of 1940.

(2) Although both his admission to the United States for permanent residence and his mother's naturalization as a U.S. citizen occurred while he was under 16 years of age, an illegitimate child born January 1, 1932 in Finland, did not derive U.S. citizenship under section 321(a)(3) of the Immigration and Nationality Act, since he was over 16 years of age on December 24, 1952, the effective date of the Act.

(3) Since conviction within the meaning of section 241(a)(4), Immigration and Nationality Act, exists when the following elements are present: (1) if there has been a judicial finding of guilt, (2) the court takes action which brings the case in the category of those which are pending for consideration by the court—the court orders that the defendant be fined or incarcerated or the court suspends the imposition of sentence, and (3) the action of the court is considered a conviction by the state court for at least some purpose, an alien convicted on a plea of guilty of the crime of simple robbery by a Colorado court which ordered imposition of sentence suspended and placed him on probation for 5 years has been convicted.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes after entry, to wit, simple robbery and statutory rape.

The case comes forward on appeal from the decision of the special inquiry officer dated May 23, 1963 ordering respondent deported to Finland on the charge contained in the order to show cause.

The first issue is that of alienage. The respondent was born out of wedlock on January 1, 1932 in Finland. The respondent's mother was naturalized on January 15, 1945 in the United States District Court at New York. The respondent was admitted to the United States for permanent residence on June 16, 1947. At the time of his admission to the United States he was under 16 years of age, being 15 years and five months old. Since the mother's naturalization and the

respondent's lawful admission for permanent residence occurred subsequent to the effective date of the Nationality Act of 1940 on January 13, 1941, the respondent could not acquire United States citizenship under the provisions of section 2172 of the Revised Statutes of the United States.

Counsel urges that respondent is a United States citizen under section 314(a) or section 314(b) of the Nationality Act of 1940 or, in any event, under section 321(a)(3) of the Immigration and Nationality Act. Section 314 of the Nationality Act of 1940 provides that a child born outside the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen upon fulfillment of the following conditions:

(a) The naturalization of both parents; or

(b) The naturalization of the surviving parent if one of the parents is deceased; * * *

(c) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents; and if—

(d) Such naturalization takes place while said child is under the age of eighteen years; and

(e) Such child * * * thereafter begins to reside permanently in the United States while under the age of eighteen years.

Counsel concedes that the respondent is an illegitimate child and that there has never been any adjudication of paternity. He argues that in this case the mother is to be considered as the parent or that there should be a presumption of death of the putative father and that the surviving parent is the mother. He cites several cases dealing with legitimate children where the surviving parent was divorced with the right of custody which was sufficient for derivation of citizenship and another case involving a widowed mother who became a citizen while her legitimate child was a minor residing in the United States.[1]

It may be pointed out that the cited cases involve legitimate children and there is no evidence in the instant case that the mother is the surviving parent or that the putative father has died.[2] In the report of the Committee on the Judiciary pursuant to Senate Resolution 137 it was recognized that under the 1940 Act a child born out of wedlock and never legitimated could not derive United States citizenship either through the naturalization of the putative father or through his

---

[1] *Petition of Bonsky*, 77 F. Supp. 832 (S.D. Mich., 1948); *In re Graf*, 277 F. 969 (D. Md., 1922).

[2] *Matter of D—W—M—*, 9 I. & N. Dec. 633 involved an adopted child and is not pertinent.

mother.[3] However, in granting naturalization to a foreign born illegitimate child, who was born on July 13, 1944, was admitted to the United States for permanent residence on July 26, 1947 and whose mother became naturalized on September 1, 1950 petitioned for her illegitimate child under section 322 of the 1952 Act, the court by granting such naturalization indicated that automatic derivative citizenship would not have been available to such a child under the 1940 Act.[4]

Counsel also urges that the respondent derived citizenship under the provisions of section 321(a)(3) of the Immigration and Nationality Act. This section provides for acquisition of citizenship upon the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimization and if such naturalization takes place while such child is under the age of 16 years; and such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of such parent or thereafter begins to reside permanently in the United States while under the age of 16 years.

In *Matter of L—*, 7 I. & N. Dec. 512, after first noting that under the Nationality Act of 1940 a child born out of wedlock did not derive citizenship through its mother, the facts were that the subject was born out of wedlock on April 1, 1938 in Martinique, the mother was naturalized on November 20, 1951 and the subject was admitted for permanent residence on December 4, 1953. In analyzing section 321(a) of the Immigration and Nationality Act, the following basic requirements were set forth: (1) that the parent or parents be naturalized; (2) that such naturalization take place while the child is under the age of 16 years; and (3) that the child take up lawful permanent residence in the United States before reaching the age of 16 years. It was held that the subject acquired United States citizenship upon his lawful admission to the United States for permanent residence on December 4, 1953. Likewise, in *Matter of T—*, 7 I. & N. Dec. 679, a child born out of wedlock was held to have acquired citizenship under section 321(a) of the Immigration and Nationality Act when she reentered the United States as a returning resident in 1955 prior to her 16th birthday, her mother having been naturalized a United States citizen in November 1952. It was held that the law in effect when the

---

[3] Senate Report No. 1515, 81st Cong., 1st Sess., 708. Under section 102(h) of the 1940 Act (8 U.S.C. 502(h), 1942 ed.) the term "child" included a child legitimated under the law of the child's residence or domicile whether in the United States or elsewhere; also a child adopted in the United States, provided such legitimation or adoption takes place before the child reaches the age of 16 years and the child is in the legal custody of the legitimating or adopting parent or parents.

[4] *In re Howard's Petition*, 147 F. Supp 676 (W.D. Mo. W.D., 1956).

last material condition is met is controlling; that one of the conditions of section 321 set forth in subsection (5) is that the child must begin to reside permanently in the United States or must have been lawfully admitted to the United States for permanent residence while under the age of 16 years. The original entry of the applicant in 1948, prior to the Immigration and Nationality Act of 1952, did not operate to confer upon her any derivative citizenship under section 321(a) of the Act. However, her reentry in 1955 while she was still under 16 years of age operated to confer derivative citizenship under section 321(a) of the 1952 Act.

In *Matter of L—*, 8 I. & N. Dec. 272, the respondent, an illegitimate child, was born in Jamaica on September 21, 1938. He was lawfully admitted to the United States for permanent residence on June 2, 1949 when about 10 years of age. His mother was naturalized on December 12, 1949 when respondent was 11 years of age. The Board quoted with approval the special inquiry officer's order that there was no doubt that under the law in effect at the time the respondent entered the United States and at the time of his mother's naturalization, section 314 of the Nationality Act of 1940 did not provide for derivation of United States citizenship through the naturalization of his mother because he was an illegitimate child. The Board then went on to restate the holding in *Matter of L—*, 7 I. & N. Dec. 512, that the basic requirements of section 321 of the 1952 Act were that: (1) the parents or parent be naturalized; (2) such naturalization take place while the child is under the age of 16 years; and (3) the child takes up lawful permanent residence in the United States before reaching the age of 16 years. It was not necessarily the passage of the Act which was the last material condition but the fact that number two of the three material conditions is an "open condition", a continuing situation, permitting the statute to bestow citizenship on respondent so long as he was under the age of 16 when the law was passed. The Board referred to the case of *Espindola* v. *Barber*, 152 F. Supp. 829 (N.D. Cal., 1957), as not a binding precedent because Espindola was past 16 when the 1952 Act became effective and clearly could not have brought himself within the terms of section 321 of the Immigration and Nationality Act.

The case of *Espindola* v. *Barber*, *supra*, involved an alien illegitimate son, born October 22, 1935 whose mother became a naturalized citizen on March 7, 1950. The plaintiff was lawfully admitted to the United States for permanent residence on September 4, 1943. The court then cited the legislative history contained in Senate Report No. 1515, 81st Cong., 1st Sess., 708, for recognition of the fact that under the 1940 Act a child born out of wedlock and never legitimated could not derive United States citizenship under the naturalization of either

his father or mother. Turning to section 321(a)(3) of the Immigration and Nationality Act (8 U.S.C. 1243(a)(3)), the court stated that it was clear that Congress intended to and did change the law in this regard in 1952 and did not intend, by the Act of that year, merely to restate what it thought the prior law had been. The court held that the 1952 Act could not be construed as having retroactive effect by the broad language of the savings clause set forth in section 405 (Title 8 U.S.C.A. 1101, note). It held that the language of the savings clause was broad enough to apply as well when the Government is relying on the provision; that the plaintiff, prior to the 1952 Act, had the "status" or "condition" of an alien not eligible to claim derivative citizenship and in view of the savings clause, section 321(a)(3) of the 1952 Act could not operate to affect that "status" or "condition". The court cited *United States* v. *Menasche*, 348 U.S. 528 and other cases and held that the savings clause could not operate to affect the plaintiff's "status" or "condition" and that the plaintiff was not a citizen of the United States.

In the instant case the respondent was not eligible for derivative citizenship under the 1940 Act or any prior Act. The respondent was over 20 years of age when section 321(a)(3) of the Immigration and Nationality Act became effective on December 24, 1952. The Act had no retroactive effect and there was no status or condition to be affected by the savings clause inasmuch as the respondent was an alien under prior law and could not benefit by the new Act because he was then overage. It is concluded that alienage has been established.

The crimes which form the basis of the specification in the order to show cause are simple robbery for which the respondent was convicted in September 1955 in Colorado and statutory rape in violation of Connecticut statutes for which the respondent was convicted on March 22, 1960. The crimes were committed respectively on August 29, 1955 and January 10, 1960. From the very nature of the crimes and the interval in time and locale of their commission, it is obvious that they did not arise out of a single scheme of criminal misconduct.

Counsel at oral argument raises the contention that the record of the crime in Colorado did not establish a conviction. He does not dispute the fact that the crime involves moral turpitude. However, the record of conviction shows that on September 26, 1955 in the District Court in and for the City and County of Denver, Colorado the court found that the evidence sustained the plea of guilty entered by the defendant; that the cause was continued for hearing on the probation report; that on September 28, 1955 the court granted the petition of the defendant that he be placed on the county work gang for a period of 90 days and further ordered that the cause be continued for hearing on probation; that on December 21, 1959, the court after hearing and

the report of the probation officer, ordered that imposition of sentence be suspended for a period of five years, the court to retain jurisdiction until that time, and that defendant be released from custody.

The main force of counsel's argument is that the action of the court in suspending the imposition of sentence for five years and placing respondent upon probation did not result in such a finality of conviction as would sustain the order of deportation, citing *Pino* v. *Landon*, 349 U.S. 901 (1955), as well as certain other Colorado cases. At the outset it may be noted that the order to show cause is predicated upon the second section of section 241(a)(4) which renders deportable an alien who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial. It may be noted that the statute, 39-16-6 Colorado Revised Statutes of 1953, empowers the court to grant probation and provides that the period of probation together with any extension thereof shall not exceed five years.

The deportation statute does not make confinement the test of deportability but concerns itself with conviction solely. In one of the cases cited by counsel [5] it was held that in a criminal case the sentence is the judgment and that a judgment need not be entered upon a verdict.

The matter involved in the hearing has been the subject of previous adjudication. In the latest case of *Murillo Gutierrez* v. *Immigration and Naturalization Service*, No. 18565 (9th Cir., October 11, 1963), there was involved an alien who was convicted in California on a narcotic charge, was found guilty by the court which ordered a probation report and continued proceedings; thereafter the court suspended proceedings and placed the petitioner on probation. On review the petitioner contended that the Immigration Service erred in determining that the appellant had been convicted of a crime which subjected him to deportation and erred in finding that the proceedings upon which the appellant was found guilty had reached such finality that an order of deportation could be predicated thereon. The court noted that the statute required only a conviction and not a judgment of conviction and that under California law the word "convicted" signified the status of a person after entry of a plea of guilty to a criminal charge or against whom a verdict of guilty of a criminal charge has been returned by a jury; and the phrase "a judgment of conviction" means the imposition of a sentence upon a person who has been convicted of a criminal charge after a plea of guilty or the rendition of a guilty

---

[5] *Loos* v. *People*, 268 P. 536.

verdict.[6] The court also shared the views expressed in *Arrellano-Flores* v. *Hoy*, 262 F. 2d 667 (9th Cir., 1958), cert. den. 362 U.S. 921, that it was inclined to believe that perhaps here Congress intended to do its own defining rather than leave the matter to the variable state statutes. Credence for this view can be found in the fact that the present statute reads "convicted" while its predecessor read "convicted and sentenced." It would appear that federal courts have generally taken the view that a plea of guilty or finding of guilty, which is in repose and remains undisturbed amounts to a conviction. The court went on to distinguish the case of *Pino* v. *Landon*, 349 U.S. 901, which involved a Massachusetts procedure within which the petitioner had the right to a trial de novo in the superior court if he took an appeal from the District Court, the District Court suspended the imposition for one year and placed the sentence on file with the crucial difference that if the court ever removed the case from file to require the petitioner to serve the sentence, he would then be entitled to a *de novo* review on appeal. The court held that under these circumstances, especially the availability of the *de novo* review, there was no adjudication which could be recognized as final in Massachusetts that the petitioner had committed any crime.

In the instant case there was a conviction pursuant to the respondent's plea of guilty which was appealable. It was not necessary that a judgment of conviction be entered upon the verdict of guilty. The difference from the situation existing in the case of *Pino* v. *Landon*, *supra*, is obvious.

The administrative decision cited by counsel, *Matter of J—*, 7 I. & N. Dec. 580, concerned a case in Florida in which the court had *postponed* imposition of sentence. The decision noted that unlike the cases which suspended imposition of sentence which have been held to constitute a final conviction, this postponement of imposition of sentence did not support a finding of deportability.

Later administrative decisions have recognized that for deportation purposes a conviction exists where the following elements are present: (1) if there has been a judicial finding of guilt, (2) the court takes action which brings the case in the category of those which are pending for consideration by the court—the court orders that the defendant be fined or incarcerated or the court suspends the imposition of sentence, and (3) the action of the court is considered a conviction by the state court for at least some purpose.[7] It is concluded that in the instant

---

[6] Citing *Adams* v. *United States*, 299 F. 2d 327 (9th Cir., 1962) ; *Hernandez-Valenzuelos* v. *Rosenberg*, 304 F. 2d 639 (9th Cir., 1962) ; *Zabanazad* v. *Rosenberg*, 306 F. 2d 861 (9th Cir., 1962).

[7] *Matter of L—R—*, 6 I. & N. Dec. 209; *Matter of M—D—*, 9 I. & N. Dec. 172; *Matter of R—R—*, 7 I. & N. Dec. 478.

case the conviction for simple robbery in Colorado meets this test of finality of conviction. The second conviction, of statutory rape in Connecticut, clearly involves moral turpitude also. It is concluded that the charge contained in the order to show cause is sustained.

The respondent is not eligible for adjustment of status pursuant to section 245 of the Immigration and Nationality Act because he was originally lawfully admitted for permanent residence and subsequently became deportable, a fact which does not vitiate his prior lawful entry.[8] He is ineligible for voluntary departure because the crime of rape was committed in January 1960, within the five-year period for which good moral character must be established.[9]

The respondent has a citizen wife and two citizen minor children. However, he has been separated from his wife for two years. The separation was caused by respondent's drinking and gambling and his wife did not know of his arrest for statutory rape. However, she indicates a willingness to give him another chance, even though the respondent has contributed but little to her support. However, as has already been pointed out, the respondent is not eligible for discretionary relief. The appeal will be dismissed.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

---

[8] *Matter of Da Silva*, Int. Dec. No. 1268.
[9] Section 101(f)(3) of the Immigration and Nationality Act (8 U.S.C. 1101(f)(3)).