**Geilher MOLINA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 89–1684, 90–1167.

United States Court of Appeals, First Circuit.

Submitted Oct. 6, 1992.

Decided Dec. 4, 1992.

John H. Ruginski, Jr., Providence, R.I., for appellant.

Harvey Kaplan, Maureen O'Sullivan, Jeremiah Friedman, Kaplan, O'Sullivan & Friedman, Boston, Mass., Lory D. Rosenberg, American Immigration Lawyers Ass'n, Washington, D.C., Kenneth H. Stern and Stern & Elkind, Denver, Colo., on briefs for American Immigration Lawyer's Ass'n and Nat. Immigration Project of the Nat. Lawyers Guild, amici curiae.

Norah Ascoli Schwarz with whom Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, and Jill E. Zengler, Attorney, Office of Immigration Litigation, Washington, D.C., were on brief for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

Geilher Molina asks us to review two decisions regarding his immigration status. *See* 8 U.S.C. § 1105a(a). First, the Board of Immigration Appeals (affirming an immigration judge) held that Molina had entered the United States unlawfully, and it ordered him deported. *See* 8 U.S.C. § 1251(a)(2). Second, the INS Legalization Appeals Unit denied Molina's "amnesty" request (to become a temporary resident *despite* his unlawful entry) because of his two drug-crime convictions. *See* 8 U.S.C. §§ 1255a(a), 1255a(a)(4)(B). We find both of these decisions lawful, and we dismiss Molina's review petitions.

## I

### *The Deportation Decision*

■ Molina argues that the decision ordering him deported contains three legal flaws. First, he says the decision is procedurally flawed because he was not present at his immigration hearing, on March 30, 1987. He argues that the immigration judge should have granted a continuance instead of then ordering him deported. Molina must concede, however:

1) that, at a first scheduled immigration hearing a month earlier, he personally had asked for an initial continuance until March 30 (because his counsel could not be present in February);

2) that the immigration judge then told him he should return with counsel on March 30 and gave him a written notice of the new March 30 hearing date;

3) that his counsel, present on March 30, could offer no reason for Molina's absence, stating simply that Molina "probably got lost or he couldn't get up here today;" and,

4) that his counsel conceded that he had entered the United States unlawfully— a fact that he does not now deny.

Immigration judges have broad legal power to decide whether or not to grant continuances. *See Castaneda–Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir.1975); *Patel v. INS*, 803 F.2d 804, 806 (5th Cir.1986). Given the circumstances just described, the immigration judge, in denying a further continuance, acted well within the boundaries of that power. *See, e.g., Reyes–Arias v. INS*, 866 F.2d 500 (D.C.Cir.1989) (no abuse of discretion to deny continuance and proceed with hearing in alien's absence

where counsel is present). Thus, there is no procedural flaw.

■ Second, Molina argues that the immigration judge, instead of ordering him deported, should have permitted him to leave voluntarily. *See* 8 U.S.C. § 1254(e) (authorizing Attorney General to permit voluntary departure). This INS decision, too, however, is highly discretionary. *Strantzalis v. INS*, 465 F.2d 1016, 1017 (3d Cir.1972). To qualify for voluntary departure, a deportable alien must show that he has demonstrated "good moral character" over the preceding five years. *See* 8 U.S.C. § 1254(e); *Trias–Hernandez v. INS*, 528 F.2d 366, 370 (9th Cir.1975). Molina has made no such demonstration.

We add one point. The record shows that the immigration judge said he would deny Molina's voluntary departure request "because Molina did not appear at the hearing." However, read in context, that statement does not imply that the immigration judge was equating "bad character" with "failure to appear." In making the statement, the judge simply was referring to Molina's failure to demonstrate good character, at the hearing or elsewhere in the record.

■ Third, Molina says that he later told the BIA why he was late, and he argues that the BIA then should have reopened the matter. BIA regulations, however, say that a

> motion to reopen shall state the new facts to be proved and shall be supported by affidavits or other evidentiary material.

8 C.F.R. § 3.8(a). The only evidence attached to Molina's motion consisted of a traffic ticket issued on the date of the hearing and an auto repair shop receipt dated March 30 *one year later.* Moreover, the record is silent as to what, in a reopened proceeding, Molina could have shown that might have helped him. Thus, the INS's decision not to reopen (like its decision to deport Molina and its decision not to permit him to depart voluntarily) was plainly lawful. *See Fuentes v. INS*, 746 F.2d 94 (1st Cir.1984) (alien must support motion to reopen with affidavits or other evidence).

## II

### The "Amnesty" Decision

The immigration laws grant a kind of "amnesty" to certain aliens who have lived unlawfully in the United States since 1982. They permit the Attorney General to "adjust the status of [such] an alien to that of an alien lawfully admitted for temporary residence." 8 U.S.C. § 1255a(a)(4). The Attorney General may make this adjustment, however, only if the alien is "admissible as an immigrant." *Id.* And, an alien is "admissible as an immigrant" only if (among other things) he "has not been convicted of any felony." 8 U.S.C. § 1255a(a)(4)(B).

■ Molina asked for "temporary residence" under these provisions. The INS (through its Legalization Appeals Unit) denied his request because, in its view, Molina had "been convicted" of two drug felonies. Molina admitted that, on two occasions, he had pled nolo contendere to Rhode Island drug charges and that he had been sentenced to probation, but he denied that these dispositions of the charges against him amounted to "convictions." And, he sought review of the INS decision in this court.

While Molina's petition was pending before this court, the INS asked us to remand this aspect of Molina's case. The Legalization Appeals Unit of the INS, and the Bureau of Immigration Appeals of the Department of Justice ("BIA"), from time to time, have changed the standards they use to determine what counts as a "conviction." *Compare Matter of M—*, 19 I. & N. Dec. 861 (Op. Comm'r.1989) *with Matter of Ozkok*, Int.Dec. 3044, 1988 BIA LEXIS 4 (January 26, 1988) *and Matter of L— R—*, 8 I. & N. Dec. 269 (BIA 1959). The Fifth Circuit had held that the INS's most recent change in these standards was unlawful in that it was inconsistent with binding BIA precedent. *See Martinez–Montoya v. INS*, 904 F.2d 1018, 1022–24 (5th Cir.1990) (setting aside INS decision in *Matter of M—* as inconsistent with BIA precedent in *Matter*

*of Ozkok* ). And, the INS wished to reconsider Molina's status adjustment request in light of the Fifth Circuit opinion. After reconsideration, the INS Legalization Appeals Unit, applying the standard set out in *Matter of Ozkok* (which preceded the *Matter of M—* standard invalidated by the Fifth Circuit), reaffirmed its original determination. *See Matter of Ozkok, supra; cf. Matter of L— R—, supra.* Molina now continues to press his original argument, namely that he is entitled to amnesty because a "nolo plea plus probation" under Rhode Island law does not amount to a "conviction."

A

*Defining the Word "Conviction:"*
*The "Ozkok" Standard*

Almost every state has some provision in its criminal law that permits a person, accused of a crime, to enter a plea that leads 1) to a kind of "provisional" conviction, 2) followed by probation, and 3) followed by some kind of "expunging" of the conviction upon successful completion of probation. *See Dickerson v. New Banner Institute,* 460 U.S. 103, 121–22, 103 S.Ct. 986, 996, 74 L.Ed.2d 845 (1983) (describing variations among state procedures). The INS has developed standards (which it has modified from time to time) designed to define just when such "pleas plus probation" amount (for federal immigration law purposes) to "convictions," and when they do not.

In 1988, in *Matter of Ozkok,* the BIA set forth the standards that the INS now applies to Molina. In that case, the BIA said it would (for federal immigration law purposes) consider a "person" to have been "convicted," if

1) "the court has adjudicated him guilty" or "has entered a formal judgment of guilt"

*or*

2) an "adjudication of guilt has been withheld" *and*

   a) "a judge or jury has found" him "guilty" or "he has entered a plea of guilty or nolo contendere" or he "has admitted sufficient facts to warrant a finding of guilty;" *and*

b) the "judge has ordered some form of punishment, penalty, or restraint on the person's liberty;" *and*

c) a "judgment or adjudication of guilt may be entered if the person violates the terms of his probation ... without availability of further proceedings" regarding his guilt or innocence of the crime originally charged.

*Matter of Ozkok,* 1988 BIA LEXIS at 12–13.

Molina's case, as we have said, involves a "plea plus probation." In fact, it involves two of them:

a) On February 19, 1987, Molina pled "nolo contendere" in a Rhode Island court to a charge of possession of cocaine. The court placed him on probation for 18 months.

b) On February 26, 1987, Molina pled "nolo contendere" in a Rhode Island court to a charge of possession of a controlled substance. The court placed him on probation for two years.

The INS held that these "pleas plus probation," in the circumstances here present, met the *Ozkok* tests to qualify as convictions. Indeed, the "pleas plus probation" apparently met *both Ozkok* tests. They met the first test because the state documents entitled "Judgment and Disposition" in each case specifically say, *"IT IS ADJUDGED that the defendant has been adjudged guilty"* upon the "plea of (nolo contendere)." (See Appendix A). They met the second test because, in each instance, a) there was a plea of nolo contendere; b) the judge ordered probation, which, to a degree, restrained Molina's liberty; and c) a probation violation would have led to further punishment without further litigation about the original crime. *See* R.I.Gen.L. § 12–19–19 (after plea of nolo contendere, court may impose sentence at any time or, if sentence is deferred pursuant to an agreement, within five years after the agreement); R.I.Gen.L. § 12–19–9 (upon probation violation, defendant shall appear before the court and, after statement of facts documenting probation violation is received by court, court may in its

discretion order defendant committed on previously set or new sentence, or continue suspension of sentence).

As the INS noted, the relevant Rhode Island law also contains a kind of "expungement" provision. That law provides that "upon the completion of the probationary period, and absent a violation of the terms of said probation[,] said plea [of nolo contendere] and probation *shall not constitute a conviction for any purpose.*" R.I.Gen.L. § 12–18–3 (emphasis added). Under the *Ozkok* rules, the existence of this "expungement" provision is beside the point, at least in a case like Molina's. Accordingly, the INS held that the Rhode Island provision's existence did not change the result.

### B

#### Molina's Argument: The Existence of Legal Power

■ Molina points out that Rhode Island law says that, after he successfully completes probation, his "plea plus probation" shall not "constitute a conviction for *any* purpose." (emphasis added). The INS, however, counts his "plea plus probation" as a "conviction" for at least *one* purpose, namely to deny him amnesty under immigration law. The INS's denying him amnesty, Molina says, runs contrary to Rhode Island law. And, in his view, the INS must follow Rhode Island's law because of the statutory counterpart to the federal Constitution's "full faith and credit" clause. *See* 28 U.S.C. § 1738 (federal courts must give full faith and credit to state acts, records, and judicial proceedings); *cf.* U.S. Const. art. IV, § 1 (states must give full faith and credit to the public acts, records, and judicial proceedings of other states).

The problem with this argument is that neither the constitutional clause nor its statutory analogue (binding federal courts) purports to prevent federal legislative authorities from writing federal statutes that differ from state statutes or from attaching, to words in a federal statute, a meaning that differs from the meaning attached to the same word when used in a statute enacted by a state. A federal Union in which this were not so—a Union in which states possessed the constitutional power to control federal courts' interpretation of federal statutes—would not resemble our *post*–Civil War United States. The federal Constitution permits Congress to condition its immigration law upon the absence of a "conviction" as *federally* defined.

■ There is no claim here that the federal definition exceeds the bounds that some other part of the Constitution (say, the "due process" clause) might set. After all, that federal definition (according to the INS) applies the word "conviction" where the state proves, or the defendant waives his right to deny that, the defendant has committed a crime with which the state has charged him. We see nothing "fundamentally unfair" about such a definition. Nor do we see how later state proceedings could create some "fundamental unfairness" where they do not revise the state's determination of the defendant's guilt. *Cf. Thrall v. Wolfe*, 503 F.2d 313, 316 (7th Cir.1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975) (federal statutory disability may be based on state conviction despite existence of state pardon, where pardon is not expressly based on a determination of innocence). The Constitution does not require precise conformity between the word "conviction" in the federal immigration laws and the varying meanings of the word "conviction" in the laws of the fifty states.

Moreover, Molina does not (and could not successfully) argue that, in the immigration statutes, Congress intended to effect *perfect* conformity between varying state and federal laws. Rather, the need for national uniformity in the application of federal law and the history of that word as applied by the INS, see pp. 20–21, *infra*, and the courts, suggest that the federal word, while *reflecting* basic state usage, need not provide its *precise* mirror image. *Cf. Dickerson v. New Banner Institute*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983). This Circuit, forty years ago, held that the "meaning of the word 'convicted'" in the federal immigration law "is a federal question." *Pino v.*

*Nicolls*, 215 F.2d 237, 243 (1st Cir.1954) (Magruder, J.). And, the Supreme Court, reviewing the same case, reversed the Circuit on other grounds but made clear that the word's federal meaning *did not precisely track* the contours of the state's equivalent phrase. *See Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (holding that the federal immigration law word "conviction" requires "finality" despite state law precedent suggesting the contrary); *see also Yazdchi v. INS*, 878 F.2d 166, 167 (5th Cir.), *cert. denied*, 493 U.S. 978, 110 S.Ct. 505, 107 L.Ed.2d 507 (1989) (definition of the word "conviction" primarily a matter of federal law); *Chong v. INS*, 890 F.2d 284, 285 (11th Cir.1989) (same); *Kolios v. INS*, 532 F.2d 786, 789 (1st Cir.), *cert. denied*, 429 U.S. 884, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976); *Aguilera–Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Will v. INS*, 447 F.2d 529, 531 (7th Cir.1971); *Gutierrez v. INS*, 323 F.2d 593, 596 (9th Cir. 1963), *cert. denied* 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964).

■ Finally, Molina does not (and could not successfully) argue that the INS lacks the legal power to provide, within limits, an interpretation of "conviction" to which courts should pay particular attention (even if that interpretation changes somewhat over time). The application of the immigration term "conviction," at least in the context of varying state "expungement" laws and practices, raises issues that involve administration of the statute, that demand administrative expertise, and that, in the context of the entire statute, are comparatively minor or "interstitial." *See Mayburg v. Secretary of HHS*, 740 F.2d 100, 105–06 (1st Cir.1984). That being so, one would expect courts to hold that Congress has delegated a degree of legal power to the INS, the agency charged with enforcing the statutory scheme, to provide a reasonable interpretation of the word "conviction." *See generally Chevron v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Or, at the least, one would expect to find courts listening with care to the agency's interpretation, insofar as it has

the power to "persuade" if not to "control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

In sum, we have no reason to doubt that the INS, at least in principle, has the legal power to which Molina objects, namely the legal power to apply the word "conviction" in the federal immigration statute in a manner that does not conform perfectly with the application of the same word in Rhode Island's state law. This conclusion provides sufficient grounds for us to reject Molina's claim to the contrary, namely, his claim that the federal government lacks the legal power to ignore Rhode Island's "expungement" provision.

### C

### *Amici's Arguments: The Exercise of That Power*

Amici curiae have submitted briefs in which they argue, not that the INS lacked the power to vary from Rhode Island's definition of "conviction," but, rather, that the INS acted unlawfully in developing a new definition of "conviction" in the case of *Ozkok*, and then applying that new definition to Molina's pre–*Ozkok* "pleas plus probation." Normally, we would not consider these separate issues, since they were not raised by the parties in the case. *See, e.g., North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 556 n. 8 (1st Cir.1991) (declining to consider argument raised by amicus which litigants have ignored); *Baker v. City of Concord*, 916 F.2d 744, 755 (1st Cir.1990); *Lane v. First Nat'l Bank*, 871 F.2d 166, 175 (1st Cir.1989). Nonetheless, we have examined amici's arguments in order to satisfy ourselves that the INS acted lawfully in refusing amnesty to Molina. We conclude that it did.

■ Amici's most important argument is that, when Molina entered his nolo pleas, he may have relied upon the INS' pre-existing, pre–*Ozkok* interpretation of the word "conviction," set forth in the 1959 INS case, *Matter of L— R—, supra.* In 1988, in the case of *Matter of Ozkok, supra*, the INS revised this interpretation,

and it later applied the revised interpretation to Molina. Because Molina reasonably relied on pre-*Ozkok* INS rules, amici argue, the INS should have promulgated its new *Ozkok* standard so that it did not apply to any pre-existing past convictions, but only to convictions that might take place in the future. They conclude that the INS's failure to do so, say, by changing the pre-*Ozkok* definition in a *rulemaking* proceeding, or by overruling its prior case *with prospective effect only*, was "arbitrary, capricious, [or] an abuse of discretion," and therefore unlawful. *See* Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A); *cf. NLRB v. Wyman Gordon,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (finding an abuse of the agency's power to choose between rulemaking and adjudicatory proceedings as a vehicle for promulgating new policies); *NLRB v. Atkinson,* 195 F.2d 141 (9th Cir.1952) (reliance interests make it unreasonable, hence unlawful, for an agency to make policy change retroactive); *Ruangswang v. INS,* 591 F.2d 39 (9th Cir.1978) (where good faith reliance on immigration investment standard shown, court will apply standard in effect at time of investment rather than current standard); *Patel v. INS,* 638 F.2d 1199 (9th Cir.1980) (same).

The flaw in this argument lies in its premise: that Molina reasonably relied upon the pre-existing standard. The record contains no evidence that Molina *actually* relied upon pre-existing caselaw. But, even were we to engage in a legal fiction, and assume that Molina was familiar with existing law and that this familiarity affected his decision to plead "nolo", we cannot find significant, reasonable reliance. For one thing, pre-existing INS standards would *not* have told Molina that, despite his "plea plus probation," he could reasonably have expected to remain eligible for amnesty. Those standards, set forth in the BIA case *Matter of L—R—,* were, at best, ambiguous with respect to a person in Molina's situation. Under those standards, a conviction existed if:

1) there had been a judicial finding of guilt;

2) the court had removed the case from the category of "pending" cases;

3) the court had ordered the defendant fined, or incarcerated, or the court had suspended the sentence, or the court had suspended the imposition of sentence; and

4) the action of the court was considered a conviction by the state for at least some purpose.

*Matter of L— R—,* 8 I. & N. Dec. at 270. These standards clearly exempted "plea plus probation" procedures found in many states—procedures in which a court *suspends* entry of a judgment, *never* entering such a judgment if the defendant successfully completes probation. *See, e.g., Matter of Garcia,* 19 I. & N. Dec. 270 (BIA 1985) (no conviction since adjudication of guilt withheld); *Matter of Seda,* 17 I. & N. Dec. 550 (BIA 1980) (same). These standards, however, did *not* clearly exempt Rhode Island's procedure—a procedure in which the defendant is "adjudged guilty" at the time he presents his plea. Under Rhode Island procedure, it could be found, at least arguably, that: (1) there had been a judicial finding of guilt; (2) the case was no longer pending; (3) the court had "suspended the sentence," and (4) the court's action was "considered a conviction by the state for at least some purpose," namely the purpose of imposing probation. Rhode Island apparently permitted courts to consider "pleas plus probation" for purposes of enhancing sentences in any *future* criminal proceedings as well. *See* R.I.Gen.L. § 12-18-3 (evidence of nolo plea cannot be introduced in court proceeding except for sentencing purpose after conviction of a subsequent crime); *see also* R.I.Gen.L. § 12-1.3-4 (despite expungement, conviction record must be disclosed if defendant is applicant for admission to bar, court, or law enforcement agency).

Whether or not under *Matter of L— R—* standards Molina's "pleas plus probation" would have amounted to "convictions" is not completely clear. On the one hand, Rhode Island, unlike many states with similar procedures, imposes comparatively few disabilities as a consequence of a nolo plea after the defendant has completed proba-

tion and the plea has been expunged. *Cf. Garcia-Gonzalez v. INS*, 344 F.2d 804, 807 & n. 3 (9th Cir.), *cert. denied*, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965) (large number of disabilities imposed under California law despite expungement of conviction after plea and probation cited to support finding of immigration law conviction). On the other hand, Rhode Island's own caselaw indicates that, in Rhode Island, a nolo plea constitutes an admission of guilt, and is "as much a conviction as a jury's verdict of guilt would have been" for the purpose of that proceeding, *State v. Degnan*, 587 A.2d 71 (R.I.1991), and, therefore, one might claim, for the purpose of the imposition of probation which results. Moreover, a Rhode Island prosecutor apparently could introduce the "plea plus (even a successful) probation" into the record at sentencing should the defendant commit another, future crime. R.I.Gen.L. § 12–18–3.

We have used a computerized data base to search the BIA cases hoping to find an instance in which the INS applied *Matter of L— R—* to a Rhode Island–type statute. Some cases find "no conviction" in circumstances where there has been no *adjudication* of guilt. That does not seem to be the situation here. *See Matter of Garcia, supra; Matter of Seda, supra.* Other cases find that a conviction exists where the state considers the defendant to have been convicted for some purpose besides the imposition of probation. *See Matter of Zangwill*, 18 I. & N. Dec. 22 (1981); *Matter of Westman*, 17 I. & N. Dec. 50 (1979); *Matter of Robinson*, 16 I. & N. Dec. 762 (1979); *Matter of Rehman*, 15 I. & N. Dec. 505 (1975); *Matter of Pikkarainen*, 10 I. & N. Dec. 401 (1963); *Matter of A— F—*, 8 I. & N. Dec. 429 (1959). Indeed, one case finds a conviction where the state says successful probation "annuls" the conviction for *every* purpose *except* potential future sentence enhancement. And, this seems very much like the situation under Rhode Island law. *See Matter of Varagianis*, 16 I. & N. Dec. 48 (1976) (successful completion of probation "annuls" all consequences except consideration at a new sentencing proceeding if defendant commits a new crime).

Given this background, we cannot say that pre-*Ozkok* BIA standards would have exempted the Rhode Island procedure. And, we do not see how Molina, at the time of his plea, reasonably could have made a firm and favorable prediction about the matter.

Second, and independently, before Molina entered his pleas, the Supreme Court had decided a case involving the applicability of the federal word "conviction," in a federal gun control statute, to "plea plus probation" procedures. *See Dickerson, supra.* In *Dickerson*, the Court held that the definition of "conviction" within the terms of the federal gun control statute was a matter of "federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State." *Dickerson*, 460 U.S. at 111–12, 103 S.Ct. at 991. This court then held that the specific Rhode Island "plea plus probation" procedure here at issue produced a "conviction" for federal gun control purposes. *United States v. Bustamante*, 706 F.2d 13 (1st Cir.), *cert. denied*, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983).

Of course, federal gun control law is not federal immigration law. And, in 1986, Congress, in a sense, overruled *Dickerson* by explicitly amending the definition of conviction in the federal gun control statute to specifically incorporate state law. *See* Firearm Owners' Protection Act, Pub.L. 99–308, § 105, 100 Stat. 449, 459 (1986). Nonetheless, the opinions in *Dickerson* and *Bustamante*, interpreting the federal term "conviction" in a highly analogous set of circumstances, should have warned Molina (and others in his situation) not to rely on Rhode Island's expungement provision as maintaining their eligibility for amnesty.

■■■■ Given the lack of clear legal authority warranting the reliance that amici allege, the INS did not act arbitrarily in applying the new *Ozkok* standard to Molina's "conviction," even though that "conviction" occurred prior to the *Ozkok* decision. Retroactive application of agency interpretations developed through adjudication is not automatically unlawful. To the

contrary, retroactive application of new principles in adjudicatory proceedings is the rule, not the exception. And, agencies have broad legal power to choose between adjudication and rulemaking proceedings as vehicles for policymaking. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). Under the circumstances just described, the INS, in applying *Ozkok* to Molina's pre-*Ozkok* "conviction," acted within its legal authority. *NLRB v. Bell Aerospace*, 416 U.S. 267, 295, 94 S.Ct. 1757, 1772, 40 L.Ed.2d 134 (1974); *Clark–Cowlitz Joint Operating Agcy. v. FERC*, 826 F.2d 1074, 1081 (D.C.Cir.1987) (en banc), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988), *citing Retail, Wholesale & Dept. Store Union v. NLRB*, 466 F.2d 380 (D.C.Cir.1972).

Amici make two other arguments. First, they point out that the statute's word "conviction" now appears in a version of the immigration statute that Congress reenacted in 1986. *See* Immigration Reform & Control Act ("IRCA"), Pub.L. No. 99–603, 100 Stat. 3359. They argue that we should read that word, as it appears in the reenacted statute, to adopt the INS's then existing, pre-*Ozkok*, definition of the word. But we do not see why this should be so. Congressional reenactment of statutory language does not normally or automatically indicate a legislative intent to freeze all pre-existing agency interpretations of language, forever after immunizing them from change. *Cf. American Federation of Labor v. Brock*, 835 F.2d 912, 915–16 (D.C.Cir.1987) (*express*

congressional approval of administrative interpretation necessary for interpretation to be seen as mandated by statute). The case before us presents a particularly weak case for implying any such Congressional intent, for, as we have pointed out, the application of the pre-existing INS rule in *Matter of L— R—* to the Rhode Island statute was unclear. Congressional silence does not show a Congressional intent to prevent subsequent INS clarification of whether, or how, the word "conviction" applied to Rhode Island's type of procedure. Yet, amici here point to nothing but such Congressional silence from which to imply any such intent.

Second, amici argue that the *Ozkok* definitional standards conflict with an INS rule—a rule in which the INS repeats the language from *Matter of L— R—* requiring that the state procedure must be "considered a conviction ... for at least some purpose." 8 C.F.R. § 242.2(g) (1988). One fatal problem with this argument is that the rule in question was an interim rule. The INS promulgated a final rule, effective before *Ozkok* was decided, and that final rule did not contain the language that amici believe would have helped Molina. *See* 53 Fed.Reg. 9283 (Mar. 22, 1988), *codified at* 8 C.F.R. § 242.2(b) (1989).

For these reasons, the INS did not act unlawfully in considering Molina to have been convicted of drug crimes and therefore ineligible for amnesty.

The petitions for review are

*Dismissed.*

**24**

APPENDIX A

STATE OF
RHODE ISLAND
AND
PROVIDENCE
PLANTATIONS

JUDGMENT
AND
DISPOSITION

Superior Court in _____Providence_____ County

State of Rhode Island

vs.

Geilher Molina

IND.
INF. NO. P2863330A
COMPLAINT

On this _____19th_____ day of _____February_____, 19 87 , came the

attorney for the State _____G. Walker_____, and the defendant who

appeared in person and by counsel, namely _____J. Ruginski_____

before _____CRESTO_____, J.

IT IS ADJUDGED that the defendant has been adjudged guilty upon his/her plea
of (nolo contendere) (guilty) (not guilty, and after a verdict of guilty) of the offense(s) of

_____Count 1-Possession of cocaine_____

as charged in count(s) numbered _____1_____ of the (indictment) (information)
(complaint); and the Court having asked the defendant whether s/he has anything to
say why judgment should not be pronounced, and no sufficient cause to the contrary
being shown or appearing to the Court;

IT IS ADJUDGED that the defendant is guilty as charged and convicted.

IT IS ADJUDGED that the defendant is placed on probation for 18 months,

_____defendant to continue with TASC counseling. Supervision to be determined_____

after initial period. Costs of $60.00 are paid in full.

True Copy Attest

_____, Clerk

Office of Clerk of Superior Court

(IF CONVICTED AFTER TRIAL) The defendant has been advised of his/her right
to appeal within twenty days to the Supreme Court and of his/her right, if unable to
pay the cost of an appeal, to apply for leave to be represented on appeal by the Public
Defender or to appeal in forma pauperis.

TRUE COPY
ATTEST _____     _____     2/19/87
                    Dep. Clerk                 Justice, Superior Court            Date