MATTER OF McLEAN

In Deportation Proceedings

A-14226402

*Decided by Board December 28, 1967*

(1) Respondent's conviction of issuing check with insufficient funds in violation of section 476a of the Penal Code of California is conviction of a crime involving moral turpitude.

(2) Respondent's conviction of issuing a short check (insufficient funds) in violation of section 40-14-20 of the Colorado Revised Statutes (1963), is conviction of a crime involving moral turpitude.

(3) A single scheme of criminal misconduct within the meaning of section 241 (a)(4) of the Immigration and Nationality Act does not exist where respondent's two separate convictions for issuing fraudulent checks were by two separate courts, in two different states, relating to criminal acts performed three weeks apart, against different victims, and his inconsistent testimony shows considerable variance as to the genesis and scope of his criminal activities.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted after entry of two crimes involving moral turpitude, not arising out of a single scheme—issuing check without sufficient funds, and short check.

ON BEHALF OF RESPONDENT: Erick K. Furedy, Esquire
1224 Bannock Street
Denver, Colorado 80204

This is an appeal from the special inquiry officer's decision, finding respondent deportable as charged, and in the absence of any application for relief, ordering him deported to England.

Respondent is a 23-year-old married male alien, native of England and citizen of Great Britain. He is separated from his wife and child and does not know their whereabouts.

At the deportation proceedings, after minor corrections were made on the order to show cause, respondent conceded the truth of the five allegations of fact therein. However, he denied deportability upon two grounds: (1) that the convictions were not for two crimes involv-

ing moral turpitude, and (2) that both crimes arose out of a single scheme of criminal misconduct.

The first conviction was had in the Superior Court of the State of California, County of Los Angeles. On February 28, 1966, an information was filed against respondent, charging violation of section 476a of the Penal Code, Issuing check without sufficient funds. It is alleged in the information that on December 24, 1965 and December 27, 1965, respondent

. . . did willfully, unlawfully and feloniously and fraudulently make. draw, and utter and deliver checks and drafts for the payment of money in excess of the sum of One Hundred Dollars ($100.00), knowing at the time * * * that he had not sufficient funds in * * * said bank to meet the said * * * checks, drafts and orders * * * [and] at all of said times having the intent then and there to cheat and defraud * * *

the three different stores to which he delivered the seven specified checks. He originally pleaded "Not Guilty," but on April 20, 1966, when the case was called for trial, he changed his plea to "Guilty." On May 19, 1966, judgment was entered:

* * * that the said defendant be punished by imprisonment in the County Jail of the County of Los Angeles for the term of three hundred sixty days

Sentence was suspended and probation granted for three years.

Section 476a of the Penal Code of California is entitled "Issuing bank check with intend to defraud. * * *" It relates to any person who "with intent to defraud," makes, draws or utters any check or draft upon a bank or other depository knowing at the time of making that he has not sufficient funds for the payment of such check. It is well settled that where, by statute, the intent to defraud is an essential element of the bad check crime charged, then moral turpitude inheres in that crime; cf. *Matter of Stasinski*, Int. Dec. No. 1476; *Matter of Bailie*, 10 I. & N. Dec. 679; *Matter of Kinney*, 10 I. & N. Dec. 548. Thus, the first conviction was clearly for a crime involving moral turpitude.

On October 28, 1966, a two-count information was filed against respondent in the District Court, Second Judicial District, State of Colorado, charging violations of C.R.S. 1963, 40–14–20, as amended, "SHORT CHECK (FELONY)." The first count alleged that on December 6 ,1965 respondent, with intent to defraud and deceive, had made, drawn and uttered a check for $50 or more on a bank in which he did not have sufficient funds and had thereby obtained cash and merchandise from the May D & F Company; the second count alleging the same basic factors, referred to a second check, drawn on the same date to the order of the same company, in the amount of $41.05. Judgment on respondent's plea of guilty to the second count was entered on

August 16, 1967; the first count was dismissed. Probation was denied and respondent was sentenced to four months in the County Jail.

Section 40-14-20 of the Colorado Revised Statutes, 1963, as amended, sets forth that the crime of "Short Checks" is committed by any person "who with intent to defraud or deceive" makes, draws or utters a check for the payment of money upon any bank or other depository in which he does not have sufficient funds for the payment of the same, and who thereby obtains any valuable thing, or issues the same for payment of services, wages, salary, etc. Thus, by statutory definition, intent to defraud is an essential element, and the crime therefore involves moral turpitude.[1]

By its introduction of the two records of conviction, made in two separate courts, each in a different state, relating to criminal acts performed three weeks apart, against different victims, we consider that the Government presented a prima facie case of deportability under the charge stated in the order to show cause; cf. *Matter of Vosganian,* Int. Dec. No. 1676. Respondent, however, contends that the two convictions arose out of a single scheme of criminal misconduct, and has presented his testimony and that of his girl friend, Miss Joan Peterson, to show by the evolution, purpose, scope, etc., of his criminal activities, that they arose out of a single scheme.

As was pointed out in *Wood* v. *Hoy,* 266 F. 2d 825, it is incumbent upon the Government, if it wishes to have the deportability charge sustained, to establish that there was not a single scheme. However, as was also pointed out in the *Wood* case, the claim of a single scheme by the respondent is not conclusive that such a scheme existed. The Government can weaken, modify or lessen the effect of such testimony by cross-examination or by otherwise impeaching his testimony; the special inquiry officer can find the testimony not to be credible, or the premise of a single scheme, under the specified conditions, may be found too, inherently improbable (cf. *Wood* v. *Hoy, supra,* at 831 *et seq.*). It may be found, as a matter of law, that the particular facts testified to, even if accepted as true, do not bring a particular course of

---

[1] Counsel contends that the question of moral turpitude as to the Colorado conviction was not properly proved because, citing Title 28 U.S.C., section 1738, the Colorado Statute was not introduced in sealed authenticated copy. The cited section relates to the Federal Judiciary and Judicial Procedure. Deportation proceedings are not judicial proceedings and strict judicial rules of evidence do not apply; cf. *Matter of Pang,* Int. Dec. No. 1479; *Matter of Argyros,* Int. Dec. No. 1577; *Matter of Sihasale,* Int. Dec. No. 1629; *Schoeps* v. *Carmichael,* 177 F. 2d 391 (C.A. 9, 1949); etc. While introduction of a copy of the Colorado statute involved would have been helpful, the omission to do so did not prevent the special inquiry officer from taking administrative notice of the statutes of the state in which the hearing was being held.

successive violations of law within the compass of "a single scheme of criminal misconduct." (Cf. *Costello* v. *Immigration and Naturalization Service*, 311 F. 2d 343; reversed on other grounds, 376 U.S. 120.)

Turning to the record before us, we must conclude that perception of respondent's activities as a single scheme can only have been achieved by hindsight. The testimony of respondent and his witness on the single scheme question, both on direct and cross, indicates considerable variance in genesis, scope, modus operandi and responsibility, for the check-cashing spree. As to the origin of the activity, at page 6 of the record respondent testified that he told his girl friend that he was going to cash a check to get some clothes. At page 29, Miss Peterson testified that the idea of the checks was hers. At page 6 respondent testified that the purpose of cashing the check was to get clothes so that he would be well dressed enough to try to find a job in Denver, but that if he did not find a job in Denver, then he would go to Los Angeles to try to find employment. At page 22, his girl friend testified that they decided to write checks to get money to go to California, where he hoped to get a better job. At page 26, she said that she stopped working in Denver "when we set up the checking account because we were going to leave."

At page 20, on cross-examination, respondent testified that he opened an account at a bank in Los Angeles, with the sum of $50, without any intention of going into fraud, simply so that he would have a place to keep his money. At page 21, on redirect, he was asked whether at the time he opened the account it was not his plan to keep on writing checks until he got employment, and he stated that it was. At page 23, Miss Peterson testified that the establishment of the checking account in Los Angeles was to obtain money to rent a place for both of them to stay, and to obtain funds until he got employment, and then enlarged further: "Yes, we were both in the same fix. We needed some decent clothes and decent things bought, so we could get decent paying jobs."

In Denver, the procedure was apparently for respondent and his girl friend each to open up an account, and to write checks for each other, which they could then deposit or cash (Tr., p. 6, p. 21, p. 23), but in Los Angeles only respondent could open an account (Tr., p. 21, p. 32), and his girl friend wrote no checks.

These are only a few of the inconsistencies. If respondent's testimony is considered alone, the scheme started with the relatively modest initial purpose of buying clothing presentable enough for job hunting in Denver, and then burgeoned into the writing of bad checks to derive the wherewithal to buy the basic necessities for light housekeeping in Los Angeles for respondent and his girl friend, and to take care of

both of their living expenses until he could find employment, whenever that might be. If Miss Peterson's testimony is considered alone, respondent had abandoned any intention of remaining in Denver and the check writing, which was her suggestion, was started for the purpose of amassing enough funds so that they could go to California together and establish themselves there; once they arrived, having used up more of their money than they had intended en route, more checks were needed to pay their rent and clothe them both decently so that they could both get decent paying jobs.

The only unifying and consistent feature to respondent's activities is that he needed money and got it by writing bad checks.

Obviously, the existence of such a purpose is too broad a criterion with which to evaluate the existence of a single scheme. The least that would appear to be required is the existence of a purpose so definite and limited in scope, both as to amount and as to time, place and manner of execution, as to make it reasonably probable that the very crimes for which respondent stands convicted would be the ones which he would commit. (*Matter of Vosganian, supra.*)

The Government has established, by skillful cross-examination, that there was no such definite and limited plan or scheme here. For the reasons above set forth, we find as a matter of fact and a matter of law that the two crimes of which respondent has been convicted did not arise out of a "single scheme of criminal misconduct," as that criterion is used in the exception to section 241(a)(4).

Counsel, in arguing for the existence of a single scheme, relies heavily on *Jeronimo v. Murff,* 157 F. Supp. 808, and *Zito v. Moutal,* 174 F. Supp. 531. Neither, it may be noted, is controlling here, *Jeronimo* having been decided on the District level in the Second Circuit, and *Zito* on the District level in the Seventh Circuit. We are aware of no reported decisions on this question in the Tenth Circuit, which is where the deportation proceedings were held. However, neither of the cited decisions is in point factually. *Jeronimo,* mentioned with disapproval by the Second Circuit in *Costello, supra,* relied heavily upon the fact the six counts of larceny (charged in a single indictment in one court) were characterized in that same indictment as "connected together and * * * parts of a common scheme and plan." In *Zito* (where there was also a single indictment in one court) the court's finding of resemblance to the *Jeronimo* case was supported by that fact that the indictment alleged that all of the acts in the various counts on which he was convicted were done in furtherance of a continuing conspiracy.

The decision of the special inquiry officer is a proper one and will be upheld.

ORDER: It is ordered that the appeal be dismissed.