MATTER OF SEDA

In Deportation Proceedings

A-20879583

*Decided by Board October 10, 1980*

(1) Section 101(f)(3) of the Immigration and Nationality Act, 8 U.S.C. 1101(f)(3), precludes a person from establishing good moral character if he has been convicted of or admits the commission of a crime involving moral turpitude during the period for which good moral character is required to be established.

(2) The crime of forgery, to which the respondent pleaded guilty, is a crime involving moral turpitude.

(3) A conviction exists for immigration purposes when there is a judicial finding of guilt, the court takes action which removes the case from a pending status, and the action of the court is considered a conviction by the state for at least some purposes.

(4) The Georgia Act for Probation of First Offenders provides that upon a verdict or a plea of guilty or nolo contendere, but before an adjudication of guilt, the court may, without entering a judgment of guilt, defer proceedings, place the defendant on probation, and subsequently discharge the defendant without court adjudication of guilt so that he is not considered to have a criminal conviction. *Ga. Code Ann.* sections 27-2727, 27-2728.

(5) A person sentenced under a first offender statute which provides for withholding of adjudication of guilt by the court and discharge without conviction upon successful completion of probation is not considered to be convicted for immigration purposes. *Matter of Kaneda,* 16 I&N Dec. 677 (BIA 1979); *Matter of Haddad,* 16 I&N Dec. 253 (BIA 1977); and *Matter of Werk,* 16 I&N Dec. 234 (BIA 1977), modified.

(6) Where a plea of guilty results in something less than a conviction, the plea, without more, is not tantamount to an admission of commission of crime for immigration purposes, so the respondent, who was not convicted, is not statutorily ineligible for voluntary departure as a person precluded from establishing good moral character.

(7) Notwithstanding the absence of a conviction by reason of the Georgia Act for Probation of First Offenders, a plea of guilty to the crime of forgery is a significant adverse factor in determining whether a favorable exercise of discretion is warranted.

(8) The respondent, who has no family ties or other equities to offset the adverse factors of his guilty plea to the crime of forgery and the withdrawal of church sponsorship on the basis of his objectionable behavior, is denied voluntary departure as a matter of discretion.

CHARGES:

Order: Act of 1952—Sec. 241(a)(9) [8 U.S.C. 1251(a)(9)]—Nonimmigrant student—failed to comply with conditions of status

Lodged: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant student—remained longer than permitted

ON BEHALF OF RESPONDENT: Dale M. Schwartz, Esquire
1400 Candler Building
Atlanta, Georgia 30303

BY: Milhollan, Chairman; Maniatis, and Farb, Board Members. Concurring Opinion: Maguire, Board Member. Concurring in Part, Dissenting in Part: Appleman, Board Member

In a decision dated February 15, 1979, the immigration judge found the respondent deportable on his own admission on the lodged charge, under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), as a nonimmigrant who remained longer than authorized. He further denied the respondent's request for voluntary departure. The respondent has appealed from the immigration judge's denial of voluntary departure. The appeal will be dismissed.

The respondent is a 34-year-old native and citizen of Kenya who entered the United States on September 12, 1973, as a nonimmigrant student. His status was subsequently changed to that of an exchange visitor, and his stay was extended to March 22, 1978. At deportation proceedings, he conceded deportability as an overstay, but denied that he had failed to maintain his student status as charged in the Order to Show Cause. The respondent's wife and four children, all natives and citizens of Kenya, reside in the United States with him.

At deportation proceedings, the trial attorney introduced evidence that the respondent had pleaded guilty on January 27, 1978, to the offense of forgery in the first degree in the Superior Court of the State of Georgia for Fulton County. The record indicates that the respondent was placed on probation for 5 years under the provisions of the Georgia Act for Probation of First Offenders and was ordered to make restitution in the amount of $3,585.00. The immigration judge determined on the basis of that court order that the respondent was statutorily ineligible for voluntary departure under section 101(f)(3) of the Act, 8 U.S.C. 1101(f)(3), as a person who had been convicted of a crime involving moral turpitude.

On appeal, the respondent argues that he has not been "convicted" of the forgery offense because under the Georgia statute relating to first offenders under which he was sentenced, proceedings are deferred while the defendant is on probation, and upon fulfillment of probation, the defendant is discharged without court adjudication of guilt. *Ga. Code Ann.* sections 27-2727 and 27-2728. He further cites as applicable our decisions recognizing that first offender statutes may eliminate the effect of a conviction for immigration purposes. *See Matter of Kaneda,*

16 I&N Dec. 677 (BIA 1979); *Matter of Haddad,* 16 I&N Dec. 253 (BIA 1977); *Matter of Werk,* 16 I&N Dec. 234 (BIA 1977).

In order to be eligible for voluntary departure, an alien must establish, *inter alia,* that he is, and has been, a person of good moral character for at least 5 years immediately preceding his application for such relief. Section 244(e) of the Act, 8 U.S.C. 1254(e). Under section 101(f)(3) of the Act, a person is precluded from establishing good moral character if he has been convicted of or admits the commission of a crime involving moral turpitude during the statutory period.

The record indicates that the respondent pleaded guilty to forgery, which is a crime involving moral turpitude. *See Matter of Jimenez,* 14 I&N Dec. 442 (BIA 1973); *Matter of A—,* 5 I&N Dec. 52 (BIA 1953). We, therefore, must determine whether for immigration purposes the respondent can be considered to have been "convicted" of that offense under Georgia law or to have admitted commission of the crime.

This Board has repeatedly held that a conviction exists for immigration purposes when the following elements are present: (1) there has been a judicial finding of guilt, (2) the court takes action which removes the case from the category of those which are (actually or in theory) pending for consideration by the court—the court orders the defendant fined or incarcerated, or the court suspends sentence, (3) the action of the court is considered a conviction by the state for at least some purpose. *Matter of Robinson,* 16 I&N Dec. 762 (BIA 1979); *Matter of Varagianis,* 16 I&N Dec. 48 (BIA 1976); *Matter of Pikkarainen,* 10 I&N Dec. 401 (BIA 1963); *Matter of L—R—,* 8 I&N Dec. 269 (BIA 1959).

The pertinent sections of the Georgia statute relating to first offenders provide as follows:

Probation for first offenders; when applicable; violation of terms of probation—

Upon a verdict or plea of guilty or a plea of nolo contendere by [sic] *before an adjudication of guilt,* the court may, in the case of a defendant who has not been previously convicted of a felony, *without entering a judgment of guilt* and with the consent of the defendant, defer further proceeding and place the defendant on probation as provided by the Statewide Probation Act [sections 27-2702 through 27-2726.1]. Upon violation of the terms of probation, or upon a conviction for another crime, *the court may enter an adjudication of guilt* and proceed as otherwise provided. No person may avail himself of the provisions of this law [sections 27-2727 through 27-2732] on more than one occasion.

Same; discharged probationer not to be considered to have criminal conviction; records of probation—

Upon fulfillment of the terms of probation, or upon release by the court prior to the termination of the period thereof, *the defendant shall be discharged without court adjudication of guilt.* Such discharge shall completely exonerate the defendant of any criminal purpose, shall not affect any civil right or liberties, and *he shall not be considered to have a criminal conviction.* Should a person be placed under probation under this law [sections 27-2727 through 27-2732], a record of the same shall be forwarded to the office of the State Probation System and to the Identifica-

tion Division of the Federal Bureau of Investigation. *Ga. Code Ann.* sections 27-2727, 27-2728 (emphasis added).

In interpreting these provisions, the Supreme Court of Georgia has stated that during the probationary period imposed, the defendant's trial has, in effect, been suspended, and if he successfully completes the probationary sentence without violations, no formal act of conviction is rendered. *See Favors v. State,* 214 S.E.2d 645 (Ga. 1975); *State v. Wiley,* 210 S.E.2d 790 (Ga. 1974). Thus, the clear language of the statute and the judicial interpretation thereof indicate that a defendant sentenced under the Georgia Act for Probation of First Offenders is not convicted unless and until he violates the terms of his probation or is convicted of another crime, at which time an adjudication of guilt may be entered by the court. Therefore, under the standards previously set forth, the probationary sentence imposed on a defendant under that Act should not be considered to be a "conviction" for immigration purposes. *See Pino v. Landon,* 349 U.S. 901 (1955); *cf. Matter of Winter,* 12 I&N Dec. 638 (BIA 1967, 1968); *Matter of G—,* 9 I&N Dec. 159 (BIA 1960; A.G. 1961).

In previous decisions, this Board has treated other first offender statutes, the language of which is nearly identical to the Georgia Act, as expungement statutes. *See Matter of Kaneda, supra; Matter of Haddad, supra; Matter of Werk, supra.* In *Werk* we accepted the Service policy that the federal first offender statute, 21 U.S.C. 844(b)(1), which dealt only with narcotics convictions, was comparable to the Federal Youth Corrections Act, 18 U.S.C. 5005, et seq. That Act, as well as its state counterparts, had been held to expunge narcotics convictions of youth offenders for deportation purposes. *See Matter of Andrade,* 14 I&N Dec. 651 (BIA 1974); *Matter of Zingis,* 14 I&N Dec. 621 (BIA 1974). We, therefore, held that convictions under the federal first offender statute could be considered expunged for deportation purposes.

Our subsequent inquiry in *Haddad and Kaneda,* which dealt with state first offender statutes, was limited to determining whether the statute involved was the state counterpart of the federal statute. Thus, the threshold question of whether there was a conviction in existence which could be expunged was never addressed. Although in *Werk* we quoted a Service memorandum stating that the "legislative history indicates that discharge and dismissal under [21 U.S.C. 844(b)(1)] shall not be deemed conviction of a crime," we have continued to refer to the federal first offender statute and its state counterparts as having the effect of expunging a conviction.

We now hold that a person sentenced under a first offender statute, which provides for withholding of adjudication of guilt by the court and discharge without conviction upon successful completion of proba-

tion, shall not be considered to be "convicted" for immigration purposes. Our decisions in *Matter of Werk, supra, Matter of Haddad, supra,* and *Matter of Kaneda, supra,* are modified to comport with this view.

We must next determine whether the respondent's plea of guilty constitutes an admission of commission of the crime, which also would render him ineligible for voluntary departure. Ordinarily, a plea of guilty in a criminal prosecution is regarded as an "admission" within the meaning of the immigration laws. *Blumen v. Haff,* 78 F.2d 833 (9 Cir.), *cert. denied,* 296 U.S. 644 (1935); *Matter of K—,* 9 I&N Dec. 143 (S.I.O. 1959, BIA 1959, A.G. 1961); *Matter of P—,* 4 I&N Dec. 373 (BIA 1951). However, where a plea of guilty results in something less than a conviction, it has been held that the plea, without more, is not tantamount to an admission of commission of the crime for immigration purposes. *Matter of Winter, supra.* Since we have found that the respondent's guilty plea does not amount to a conviction, it also cannot be considered to be an admission of commission of the crime. Accordingly, we find that the respondent is not statutorily ineligible for voluntary departure as a person precluded by section 101(f)(3) from establishing good moral character.

A grant of voluntary departure is a matter of discretion, however, and an alien must not only establish that he is statutorily eligible, but also that he is worthy of discretionary relief. *See Matter of Turcotte,* 12 I&N Dec. 206 (BIA 1967); *Matter of Mariani,* 11 I&N Dec. 210 (BIA 1965). Consideration of an application for voluntary departure involves many factors, including the alien's prior immigration history, the nature of his entry, and his violations of the immigration and other laws, as well as the length of residence in this country, close family ties, and humanitarian needs. *See Matter of Gamboa,* 14 I&N Dec. 244 (BIA 1972).

In the instant case, the respondent pleaded guilty to the crime of forgery. Although we have determined that such a plea does not render him statutorily ineligible for voluntary departure, we believe it is a significant adverse factor to be considered in deciding whether a favorable exercise of discretion is warranted. *Cf. Matter of Turcotte, supra; Matter of Pitzoff,* 10 I&N Dec. 35 (BIA 1962).

In addition, the church sponsor who took the respondent into his home upon his arrival in the United States testified at deportation proceedings that he asked the respondent to leave his house and that the church withdrew its sponsorship of the respondent due to his behavior. Although the respondent attempted to rebut the accusations made against him, we believe that the witness's testimony and the fact that church sponsorship was withdrawn must be viewed as negative factors in our determination on discretion.

The respondent's wife and children are citizens of Kenya whose status in this country is dependent on that of the respondent. Therefore, he cannot be considered to have close family ties in the United States. No other equities have been presented by the respondent to offset the adverse factors in this case. Accordingly, we conclude that voluntary departure should be denied as a matter of discretion. The appeal will be dismissed.

ORDER: The appeal is dismissed.

DISSENTING IN PART AND CONCURRING IN PART:

Irving A. Appleman,
Board Member

I concur in that portion of the decision which finds there was no conviction in view of the Georgia first offender statute under which the respondent was sentenced, and in the denial of voluntary departure as a matter of discretion.

However, I am disturbed by the remainder of the majority opinion. The purpose of the comments regarding *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977), *Matter of Haddad*, 16 I&N Dec. 253 (BIA 1977), However, I am disturbed by the remainder of the majority opinion. The purpose of the comments regarding *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977), *Matter of Haddad*, 16 I&N Dec. 253 (BIA 1977), and *Matter of Kaneda*, 16 I&N Dec. 677 (BIA 1979), is not clear. Those holdings are not necessarily germane to an inquiry into the language and meaning of the Georgia statute we are concerned with here, and if the intent is to impeach them, it is done in a singularly imprecise and unscholarly way. Thus the majority notes: "In previous decisions this Board has treated other first offender statutes, the language of which is *nearly identical* (emphasis supplied) to the Georgia Act, as expungement statutes." No analysis or comparison is made of the statutes in question, but the decisions in *Matter of Werk, supra, Matter of Haddad, supra,* and *Matter of Kaneda, supra,* are "modified" to comport with the present decision even though it is not shown what, or why, "modification" is needed.

The decision in *Matter of Werk* was premised on a Wisconsin first offender statute which, according to representations made by the Immigration and Naturalization Service, was a counterpart to 21 U.S.C. 844(b)(1), which, in turn, was the equivalent, in the narcotics field, of the Federal Youth Corrections Act, 18 U.S.C. 5010, et seq. Since both 21 U.S.C. 844(b)(1) and 18 U.S.C. 5010 are statutes which suspend the imposition or execution of sentence after a finding of guilt, it is clear that the Service motion to terminate in *Werk* rested on an assumption there was a conviction in that case. Whether the Service

would agree that termination was warranted in *Werk* on an assumption there was no conviction is not known, nor has the Service been given a chance to brief or argue the point. Nor is it clear whether, in casting doubt on the interpretations of state first offender statutes such as that in *Werk*, the majority also questions the reasoning in decisions involving the application of 21 U.S.C. 844(b)(1) to narcotics convictions, or the Federal Youth Corrections Act to other "convictions" (*see e.g., Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974)).

In point of fact there is a very significant difference between (a) the Georgia statute, and (b) the Wisconsin statute in *Werk*, the Michigan statute in *Haddad*, and the Virginia statute in *Kaneda*. That difference has been completely overlooked or ignored by the majority, and makes any "modification" very questionable.

In *Matter of O—*, 7 I&N Dec. 539 (BIA 1957), in defining a "conviction" for deportation purposes, this Board attempted to explain the difference between a statute suspending the imposition or execution of sentence, and one which specifically postponed any consideration of a case. Only in the latter instance does the criminal proceeding fail to achieve the finality necessary to support an order of deportation. *Id.* at 543. All of the statutes involved (*i.e.*, in *Werk*, *Haddad*, and *Kaneda*, as well as here), speak of the *non-entry of a judgment* of guilt. Only one, however, the Georgia statute, specifically stipulates deferment of proceedings "*before an adjudication of guilt...*" *Ga. Code Ann.* section 27-2727 (emphasis supplied). The entry of formal judgment of guilt in a criminal proceeding is a quite different matter from an adjudication of guilt. *See generally Matter of O—, id.* at 542. Hence, even though under the Georgia statute the "prior finding of guilt may be pleaded and proven as if an adjudication of guilt had been entered . . ." in the event of a subsequent prosecution for another offense (*Ga. Code Ann.* section 27-2730), and the respondent is still on "probation" (Ex. 5), I nevertheless agree that there was no conviction here, but rather a complete deferment of the criminal proceeding without any finding of guilt. *Cf. de Lara* v. *U.S.*, 439.F.2d 1316 (5 Cir. 1971); *Pino* v. *Landon*, 349 U.S. 901 (1955).

On the other hand, a conviction acquires sufficient finality to sustain deportability when no further consideration is required as to innocence or guilt. *Matter of Johnson*, 11 I&N Dec. 401 (BIA 1965). This was the case in *Matter of Haddad, Matter of Werk* and *Matter of Kaneda, supra.* Under the statutes in those cases the defendants were clearly adjudged guilty, although no formal entry was made in the criminal record, or, if made, it was subsequently eradicated. All that was involved was a suspension of imposition of judgment and sentence, with subsequent expungement, and this *is* a conviction for deportation purposes. *Matter of Cruzado*, 14 I&N Dec. 513 (BIA 1973). Significantly,

if there were no "convictions" in the *Werk*-type cases, as the majority now appears to find, notwithstanding adjudications of guilt, then deportation for hard narcotics "convictions," after expungement under statutes such as section 1772 of the Welfare and Institutions Code of California, arguably is now open to challenge.[1]

I see no reason for disturbing the earlier decisions at this time. They appear to be correct and, in any event, their consideration is not necessary to the determination in this case. If the majority thought them relevant, one would have hoped for, and expected, a more satisfactory and lucid justification for "modification" than that the statutes involved are "nearly identical." Since the relief is being denied as a matter of discretion in any event, it is hard to understand the need for a rash venture into this particular legal thicket. *Bagamasbad* v. *INS*, 429 U.S. 24 (1976). I expressly dissent from the attack on those precedents.

CONCURRING OPINION: Mary P. Maguire, Board Member

Contrary to the suggestion in the dissent, the intent of the majority opinion is not to impeach, but to clarify the Board's former decisions which were decided on a theory which the majority now finds to be incorrect. Therefore, in order to be legally precise and consistent in our rulings, the majority believes that they should be amended to reflect the Board's current opinion. In my view, it would indeed be unscholarly to leave unrevised a decision which the majority believed to be founded on legally erroneous conclusions.

The dissent correctly points out that the Board's decision in *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977), was premised on a Service memo which referred to the federal first offender statute, 21 U.S.C. 844, as the "equivalent" in the narcotics field of the Federal Youth Corrections Act. However, the dissent states further that these statutes are similar in that both suspend the imposition or execution of sentencing after a finding of guilt. Examination of the statutes reveals the fallacy of that statement.

Under the Federal Youth Corrections Act, the court may suspend the imposition or execution of sentence of a youth offender and place him on probation. It may then discharge him from probation, which

[1] Attorney General, of course, and the Ninth Circuit have consistently upheld deportability in such cases despite expungement. *Matter of A—F—*, 8 I&N Dec. 429 (A.G. 1959), aff'd, *Arrellano-Flores* v. *Hoy*, 262 F.2d 667, *cert. denied*, 362 U.S. 721 (1960); *cf. Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *see also Matter of G—*, 9 I&N Dec. 159 (A.G. 1961); *Kelly* v. *INS*, 349 F.2d 473 (9 Cir. 1965), *cert. denied*, 382 U.S. 932 (1965); *Garcia Gonzales* v. *INS*, 344 F.2d 804 (9 Cir. 1965). The dicta as to *Werk*, etc., would seem to fly in the face of these holdings.

effectively sets aside the conviction. We have found that this statute provides for a total expungement which eliminates the conviction as a basis for deportation. *See Matter of Berker*, Interim Decision 2511 (BIA 1976); *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974); *see also Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974).

The federal first offender statute, on the other hand, provides that there is no conviction if the court defers proceedings without entering a judgment of guilt and later discharges the defendant and dismisses the proceedings against him after successful completion of probation. This statute, as well as each of the state statutes we have considered, specifies that such discharge and dismissal shall be without court adjudication of guilt and shall not be deemed a conviction. The Service, in fact, notes in its memorandum that the legislative history of the statute supports the conclusion that no conviction exists upon discharge and dismissal.

Thus, it is clear that these two statutes are by no means procedurally equivalent to one another. They are comparable, however, in that they provide a means to ameliorate the stigma of conviction for a certain class of offenders to whom Congress sought to extend leniency. I believe that the Service's use of the term "equivalent" was intended to equate the effect rather than the legal function of the two statutes and to reflect its conclusion that an alien sentenced under either statute should not be subject to deportation. Inasmuch as the Service recognized that no conviction resulted under the first offender statute, and advocated that it be treated in the same manner as the Federal Youth Corrections Act, I have no doubt that it would approve of the conclusion reached in the majority opinion.

I would note, however, my confusion with the dissent's question regarding the application of the Board's reasoning to cases involving 21 U.S.C. 844(b)(1) in narcotics convictions or the Federal Youth Corrections Act in other convictions. The federal first offender statute, by its very language, is limited to narcotics offenses, so it can only be applied in such cases. Furthermore, as we have distinguished the procedure used in first offender statutes from that in the Federal Youth Corrections Act and its state counterparts, I do not see how it could logically be inferred that the majority's decision in this case affects our decisions regarding the Federal Youth Corrections Act in either narcotics or non-narcotics cases. *See Matter of Zingis, supra; Matter of Nagy*, 12 I&N Dec. 623 (BIA 1968). Moreover, if the majority had believed that such decisions were altered by its opinion in this case, the majority would have so stated.

I also wish to note my disagreement with the conclusion in the dissent that there are significant differences between the Georgia statute and the other first offender statutes which this Board has

examined. The difference claimed is that the Georgia statute specifies that the proceedings may be deferred before an adjudication of guilt, whereas the others speak only of the nonentry of a judgment of guilt. It is also stated in the dissent that the entry of a formal judgment of guilt is different from an adjudication of guilt, with citation being made to *Matter of O—*, 7 I&N Dec. 539, 542 (BIA 1957).

I would first point out that 21 U.S.C. 844(b)(1), on which our rulings regarding the state first offender statutes rely, states that if a person is found guilty, after trial or upon a plea of guilty, the court may, without entering a judgment of guilt, defer proceedings and place him on probation and, upon violation of the conditions of probation, may enter an adjudication of guilt and proceed to sentencing. Furthermore, each of the state statutes also provides for deferment of proceedings following a plea or finding of guilty without a judgment of guilt being entered by the court. Inasmuch as proceedings are deferred under each of the statutes and no judgment of guilt is entered by the judge, I am unable to determine what, if any, are distinguishing factors.

In regard to the contention that a judgment of guilt differs from an adjudication of guilt, I maintain that these terms are synonymous. *See Black's Law Dictionary*, 63 (5th ed. 1979); *Webster's New Collegiate Dictionary*, 15 (1977). I believe that the dissent has confused the situation where the court, upon a guilty plea or jury verdict, finds the defendant guilty and enters a judgment of guilt but declines to impose a sentence, and that where the court, also following a plea or verdict, decides to defer proceedings and refrains from entering a judgment of guilt. These two circumstances were discussed in *Matter of O—, supra*, where it was concluded that the former case resulted in a conviction while the latter did not. I would agree and cite the Federal Youth Corrections Act as an example of a case where judgment may be entered but imposition of sentence suspended, and the first offender statutes as a situation where no adjudication of guilt is made by the court. Under either set of circumstances, a guilty plea or finding of guilt by a jury may be present, but the subsequent act of the judge determines whether a conviction exists for immigration purposes. If proceedings are deferred, there is no conviction, but a conviction results if the court enters a judgment, regardless of whether sentence is actually imposed or either the imposition or execution of sentence is suspended. *See Pino v. Landon*, 349 U.S. 901 (1955); *Matter of Robinson*, 16 I&N Dec. 762 (BIA 1979); *Matter of O—, supra*.

It is also argued by the dissent that this case is distinguishable from our previous decisions in that the defendants there were adjudged to be guilty by the court and were sentenced to fine or imprisonment or both. This is true. However, in each case, the conviction was later set aside, placing the defendant back in the position of one whose guilt had

not yet been adjudicated. Imposition of the sentence was not merely suspended, as the dissent suggests, but the conviction, including the adjudication of guilt, was totally eradicated. *See Matter of Kaneda,* 16 I&N Dec. 677 (BIA 1979); *Matter of Sirhan,* 13 I&N Dec. 592 (BIA 1970); *Matter of O'Sullivan,* 10 I&N Dec. 320 (BIA 1963). The court then resentenced the defendant under the first offender statute and discharged him by dismissing the proceedings pursuant to the statute. I, therefore, remain convinced that such discharge and dismissal under each of the first offender statutes does not amount to a conviction, as is manifest from language of each statute, and believe that our decision correctly so states.