## MATTER OF ZANGWILL

### In Deportation Proceedings

### A-21111744

### *Decided by Board March 26, 1981*

(1) Section 101(f)(7) of the Immigration and Nationality Act, 8 U.S.C. 1101(f)(7), precludes an alien from establishing his good moral character if he has been confined as a result of conviction in a penal institution for 180 days or more during the period for which good moral character is required to be established.

(2) The Florida probation statute, Fla. Stat. Ann. section 948, provides for the withholding of "adjudication of guilt" in certain cases where there has been a guilty or nolo contendere plea, or a verdict of guilty, but it does not state that a defendant handled under this procedure shall not be considered to have been convicted.

(3) Where an alien has been placed on probation and an adjudication of guilt has been withheld pursuant to Fla. Stat. Ann. section 948.01(3), he has been "convicted" for purposes of the immigration laws, and thus where he has been confined for 180 days or more for his offense, such confinement was "as a result of conviction," and he is barred from establishing his good moral character.

(4) The crime of issuing worthless checks does not involve moral turpitude if a conviction can be obtained without proof that the convicted person acted with intent to defraud.

(5) Under Florida law, knowledge of insufficient funds is an element of the crime of issuing worthless checks, but intent to defraud is not an essential element of the crime. Alien convicted under this law is therefore not inadmissible under section 212(a)(9) of the Act, 8 U.S.C. 1182(a)(9), for having been convicted of a crime involving moral turpitude, and he is thus not ineligible for adjustment of status.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:
Stephen E. Mander, Esquire
Bierman, Sonnett, Beiley
& Shohat, P.A.
200 S.E. 1st Street—#500
Miami, Florida 33131

ON BEHALF OF SERVICE:
Jim Tom Haynes
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

In a decision dated June 12, 1980, an immigration judge denied the respondent's application for voluntary departure and ordered him deported to Canada. The respondent appealed, and subsequently filed a

motion to remand. Oral argument was heard before the Board on November 19, 1980. The appeal from the denial of voluntary departure will be dismissed. The motion to remand will, however, be granted.

The respondent is a native and citizen of Canada who last entered the United States in March of 1975 as a nonimmigrant visitor for pleasure. He was authorized to remain in this country for not over 6 months, but remained beyond that time. An Order to Show Cause was issued against him on April 14, 1977, charging him with deportability as an overstay pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2). At a deportation proceeding begun on April 25, 1977, the respondent apparently conceded deportability.[1] The hearing was then continued to enable the respondent's United States citizen wife (now ex-wife) to file a visa petition on behalf of the respondent. Over 3 years later, on June 12, 1980, the hearing continued. By this time, the respondent had divorced his citizen wife. His new counsel requested another continuance, as he had only been retained the previous day and claimed not to have had an adequate opportunity to review the record file. The immigration judge denied the request for a continuance, and the hearing went forward on the issue of voluntary departure.

At the hearing, the Immigration and Naturalization Service opposed voluntary departure based on the fact that in 1975, the respondent pleaded guilty to a number of counts of issuing worthless checks under Fla. Sta. Ann. section 832.05. The respondent was not adjudicated guilty by the court for these offenses. Instead, adjudication of guilt was withheld pursuant to section 948.01 of the Florida Statutes (1975). The respondent was placed on probation by the court and as a special condition of that probation was ordered confined in a penal institution for 1 year. He was actually incarcerated for a period of 8 months. Because of this incarceration, the immigration judge found the respondent statutorily ineligible for voluntary departure for lack of the requisite good moral character, pursuant to section 244(e) of the Act, 8 U.S.C. 1254(e), and section 101(f)(7) of the Act, 8 U.S.C. 1101(f)(7).

---

[1] The conversation on the issue of deportability which took place between the immigration judge and the attorney then representing the respondent went as follows:
Q. Let me ask you this Mr. Rubenstein, are you prepared at this time to plead on the facts that are now before you in this case?
A. Yes sir.
Q. You are prepared to. You may enter a plea at this time.
A. Yes sir.
Q. Do you know what you've conceded that he is deportable as charged for having remained here for a longer period of time?
A. Yes sir.
Tr. at 4. Deportability has in fact never been in question, and the respondent states on appeal that deportability was conceded at the hearing.

In order to qualify for voluntary departure, an alien must establish that he has been a person of good moral character for at least 5 years immediately preceding his application for such relief. Section 244(e). Section 101(f) sets forth eight categories of persons who are precluded from establishing good moral character. Section 101(f)(7) states that good moral character shall not be found in an alien who, during the period for which good moral character must be established,

has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period.

The immigration judge found that the respondent came within the section 101(f)(7) bar despite the Florida court's leniency in withholding an adjudication of guilt. He noted that this Board, in an unpublished decision, *Matter of Soto-Pujol*, A12 413 847 (BIA August 18, 1967), had found that an alien who had been found guilty of larceny, but had had an adjudication of guilt stayed pursuant to section 948.01 of the Florida Statutes, was not excludable as an alien who had committed a crime involving moral turpitude prior to entry, because he had not been "convicted." Despite this case, the immigration judge concluded,

the congressional intent must receive a priority of consideration. Its intention, clearly to me, is that it meant to deny the privilege to anyone who serves a period of 180 days or more in jail because of acts constituting a crime.

The respondent argues that he was not incarcerated "as a result of conviction," as set forth in section 101(f)(7), in that he had not been convicted under Florida law, and that he thus was not barred from establishing his good moral character.

We recently had occasion, in *Matter of Seda*, 17 I&N Dec. 550 (BIA 1980), to address the issue of a section 101(f) bar in relation to a Georgia statute which provides for the suspension of adjudication of guilt for first felony offenders. There, the question was whether the alien was ineligible for voluntary departure under section 101(f)(3), which precludes an alien from establishing good moral character if, *inter alia*, he has been convicted of or admits the commission of a crime involving moral turpitude during the statutory period. We held that where the respondent had pleaded guilty to a criminal offense, but the court did not enter an adjudication of guilt but rather placed the offender on probation pursuant to the Ga. Code Ann., sections 27-2727 through 27-2728, he would not be barred under section 101(f)(3) from establishing good moral character. We found that the probationary sentence imposed upon the defendant under the Georgia Act did not constitute a conviction under state law, and thus should not be considered a conviction for immigration purposes. We further concluded that the alien's plea of guilty to the criminal offense would not constitute an admission of the commission of a crime, again, because the guilty plea resulted in

24

something less than a criminal conviction.

At oral argument before this Board, counsel for the respondent and the Appellate Trial Attorney for the Immigration and Naturalization Service agreed that *Matter of Seda, id.,* was controlling in this case. This position is at first glance appealing. Indeed, were the Florida statute and the Georgia statute the same, we would agree that *Matter of Seda* would provide authority for overruling the immigration judge's decision and finding that the respondent had not been incarcerated "as the result of a conviction," and that he was thus not barred by section 101(f)(7) from establishing good moral character. However, a careful scrutiny of the Florida statute at issue here reveals that it differs in crucial ways from the Georgia statute at issue in *Matter of Seda, id.* Both statutes, it is true, provide mechanisms for the withholding or suspending of adjudications of guilt in certain cases, and imposing probation instead. The Georgia statute relates specifically to first offenders, and provides for the deferment of further proceedings while a defendant is on probation following a verdict or plea of guilty, or plea of nolo contendere, "before an adjudication of guilt" and "without entering a judgment of guilt." The Florida statute in question here, Fla. Stat. Ann. section 948, relates to probation generally, and not specifically to first offenders, although it reflects that certain of its provisions are to relate to defendants "not likely again to engage in a criminal course of conduct." *Fla. Stat. Ann.* section 948.01(3). It provides for the withholding of an "adjudication of guilt" following a guilty verdict or a plea of guilty or nolo contendere in certain circumstances.

Despite these similarities in the statutes, an important distinction between them exists. The Georgia statute, as we pointed out in *Matter of Seda, id.,* provides that upon fulfillment of the terms of probation, or release by the court prior to the termination of probation, the defendant shall be discharged without an adjudication of guilt, and, moreover, such discharge "shall completely exonerate the defendant of any criminal purpose . . . *and he shall not be considered to have a criminal conviction.*" (Emphasis added.) There is no counterpart to this provision in the Florida statute with which we are dealing in the present case. That statute, at section 948.04, provides only that,

> Upon the termination of the period of probation, the probationer shall be released from probation and shall not be liable to sentence for the crime for which probation was allowed.

Significantly, the statute does not state that the defendant shall not be considered to have been convicted, only that he shall not be liable to sentence.[2]

---

[2] Compare also those cases involving the Federal First Offenders statute (21 U.S.C. 844(b)(1), the Federal Youth Corrections Act (18 U.S.C. 5005 *et. seq.*), and other state

As we have seen, *Matter of Seda, id.*, is clearly and importantly distinguishable from the instant case, and we cannot merely cite it to find the respondent here eligible for voluntary departure. Rather, we must decide whether the respondent's plea of guilty constituted a "conviction" for immigration purposes, despite the withholding of an adjudication of guilt pursuant to the terms of section 948.01. In making this determination, it is necessary to ascertain whether a defendant treated under that statute is considered convicted under Florida law.[3]

We have found only one case which directly addressed this question, and that case answered the question in the affirmative. In *United States v. Hartsfield*, 387 F.Supp. 16 (M.D. Fla. 1975), the defendant was charged with having knowingly made a false written statement in connection with the purchase of a gun when he stated that he was not, at the time of purchase, under indictment or information in any court for a crime punishable by imprisonment for over 1 year. The defendant had in fact pled guilty in state court to such a crime, but he had been sentenced to probation and the court had withheld adjudication of guilt and imposition of sentence, under section 948.01(3). The issue was whether the defendant could be said to have been "convicted" under state law at the time he purchased the gun. The Court noted that the Florida Supreme Court had previously held that a legal conviction for a crime included a judgment of the court of guilt, *in addition to* a plea or verdict of guilty.[4] However, the cases holding this, the Court emphasized, were decided prior to the 1959 amendment of section 948.01(3). Prior to that amendment, judges did not have the alternative of withholding not only imposition of sentence, but also withholding an adjudication of guilt. Since then, the Florida cases did not, as the District Court noted, entirely dispose of the issue of just what status a defendant had when adjudication of guilt had been withheld pursuant to that statute, *i.e.*, was he

statutes. The statutes involved in these cases are either expungement statutes (where a conviction has undoubtedly occurred but has later been in some manner expunged) or specifically provide, like the statute in *Matter of Seda, id.*, that a defendant who has not been adjudged guilty shall not be considered to have been convicted. *See, e.g., Matter of Robinson*, 16 I&N Dec. 762 (BIA 1979); *Matter of Kaneda*, 16 I&N Dec. 677 (BIA 1979); *Matter of Haddad*, 16 I&N Dec. 253 (BIA 1977); *Matter of Werk*, 16 I&N Dec. 234 (BIA 1977); *Matter of Varagianis*, 16 I&N Dec. 48 (BIA 1976); *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974).

[3] This Board has repeatedly held that a conviction exists for immigration purposes when the following elements are present. (1) there has been a judicial finding of guilt, (2) the court takes action which removes the case from the category of those which are (actually or in theory) pending for consideration by the court—the court orders the defendant fined or incarcerated, or the court suspends sentence, (3) *the action of the court is considered a conviction by the state for at least some purpose. Matter of Seda, supra; Matter of Robinson, supra; Matter of Varagianis, supra; Matter of Pikkarainen*, 10 I&N Dec. 401 (BIA 1963); *Matter of L-R-*, 8 I&N Dec. 269 (BIA 1959).

[4] *See, e.g., Weathers v. State*, 56 So.2d 536 (Fla. 1952), *cert. denied*, 344 U.S. 896 (1952).

considered to have been "convicted"?

After a review of what Florida case law did exist on this issue, the District Court in *Hartsfield, id.* at 18, stated that it was "convinced that under Florida law the defendant would be considered convicted upon the entry of his plea of guilty." We agree with this analysis. In *State v. Gazda*, 257 So.2d 242 (Fla. 1971), the Florida Supreme Court distinguished between a "conviction" and a "judgment of conviction" in construing Fla. Stat. Ann. section 775.14, Limitation on Withheld Sentences. The court there held that the defendant had been "convicted" within the meaning of that statute when he pled guilty, notwithstanding that there had been no adjudication of guilt by the trial court. It went on to explain that a "judgment of conviction" requires an "adjudication of guilt," whereas a "conviction" does not, and that a judgment of conviction was a necessary prerequisite to a valid sentence. In *Maxwell v. State*, 336 So.2d 658 (Dist. Ct. App. Fla. 1976), a Florida court of appeals cited with approval *Gazda's* holding that under section 775.14, "the term 'conviction' means determination of guilt by verdict of the jury or by plea of guilty, and does not require adjudication by the court." *Id.* at 659. Relying on this reasoning, the Court in *Maxwell* held that the defendant's possession of marijuana was a "second offense" and thus a felony, despite the fact that he had only been placed on probation, and not adjudicated guilty, for the first offense.

Under the authority of these cases, and in agreement with *Hartsfield, supra*, we hold that where an alien has pled guilty (or nolo contendere, or had a guilty verdict rendered against him) to a criminal offense in Florida, but where he has been placed on probation and an adjudication of guilt has been withheld pursuant to Fla. Stat. Ann. section 948.01(3), he has been "convicted" for purposes of the immigration laws. Accordingly, the incarceration of the respondent in the present case was "as a result of a conviction," and he is therefore barred under section 101(f)(7) of the Immigration and Nationality Act from establishing his good moral character. *Matter of Soto-Pujol, supra*, cited by the immigration judge and relied upon by the respondent on appeal is, as mentioned, an unpublished decision, is not binding, and not controlling in this case. As we find that the respondent is statutorily ineligible for voluntary departure, we need not decide whether he merits that relief as a matter of discretion.

Since the time of his hearing the respondent has married a United States citizen. He therefore now seeks a remand in order to apply for adjustment of status under section 245 of the Act, 8 U.S.C. 1255. In order to be eligible for that relief, the respondent must show that he is admissible to the United States. Our next inquiry, then, is whether or not the respondent is inadmissible under section 212(a)(9) of the Act, 8 U.S.C. 1182(a)(9), as an alien who has been convicted of a crime involv-

ing moral turpitude. We have just decided that the respondent's plea of guilty to the issuing of worthless checks resulted in a conviction. Thus, the question still remaining is whether the offense of issuing worthless checks in Florida is a crime involving moral turpitude, thus bringing the respondent within the scope of section 212(a)(9), and rendering him ineligible for adjustment of status.

We have held that where a law governing the issuance of worthless checks, by its express terms, involves an intent to defraud, then a conviction for a violation of that law constitutes a crime involving moral turpitude for immigration purposes. *See Matter of Khalik*, 17 I&N Dec. 518 (BIA 1980) (Michigan law); *Matter of Logan*, 17 I&N Dec. 367 BIA 1980) (Arkansas law); *Matter of Westman*, 17 I&N Dec. 50 (BIA 1979) (Washington law); *Matter of McLean*, 12 I&N Dec. 551 (BIA 1967) (California and Colorado law). The Florida statute in question here, however, Fla. Stat. Ann. section 832.05, does not expressly require intent to defraud as an element of the crime. The statute speaks only of the "knowing" issuance of worthless checks.

The Florida Supreme Court, in construing section 832.05, has unequivocally answered the question of whether intent to defraud is necessary to a conviction under the statute. The Court has said that the law requires, as an essential element, knowledge of insufficient funds on deposit in the bank on which the check is drawn, but it does *not* require intent to defraud. *State* v. *Berry*, 358 So.2d 545, 546 (Fla. 1978). The present case therefore comes within those Board decisions wherein it was held that, with regard to worthless check convictions, moral turpitude is not involved if a conviction can be obtained without prior proof that the convicted person acted with intent to defraud. *See Matter of Colbourne*, 13 I&N Dec. 319 (BIA 1969); *Matter of Stasinski*, 11 I&N Dec. 202 (BIA 1965). In accordance with these precedents, we find that the respondent's conviction for issuing worthless checks was not a crime involving moral turpitude. He is thus not ineligible for adjustment of status.[5] In view of his marriage to a United States citizen, a remand is now appropriate to enable the respondent to apply for adjustment. *See generally Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978).

Due to our disposition of this case, we do not find it necessary to address the respondent's arguments regarding the alleged unfairness of the June 12, 1980, hearing.

ORDER: The appeal from the immigration judge's denial of voluntary departure will be dismissed.

FURTHER ORDER: The motion to remand is granted.

---

[5] This finding also means that the respondent is not barred under section 101(f)(3) from establishing his good moral character, a point the respondent argued at length on appeal. The respondent of course remains ineligible for voluntary departure due to section 101(f)(7).

**FURTHER ORDER:** The record is remanded to the immigration judge for consideration of the respondent's application for adjustment of status pursuant to section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255.

**FURTHER ORDER:** If discretionary relief should be granted by the immigration judge, the outstanding order of deportation shall be withdrawn.